Peter Curran et al., Appellants, *v*. Hudson L. Downs et al., Respondents.

### June 10, 1879.

1. Where one permits distilled spirits to be removed from his distillery and sold in fraud of the revenue law, he cannot recover for the spirits thus sold.

2. A particular sentence disconnected with its context, and in disaccord with the whole tenor of the testimony on the point, will not support an instruction based upon it.

3. Where the plaintiff and his book-keeper shared the gains from the sale of whiskey sold in fraud of the revenue, and the sales were effected through the book-keeper as agent of his employer, the knowledge of the agent was the knowledge of his principal, and the fact that the book-keeper was the more immediate participant in the fraud will not enable his partner in the transaction to recover his share of the illicit gains.

Appeal from St. Louis Circuit Court.

*Affirmed.*

A. R. Taylor and J. A. Beal, for appellant, cited: *Curran* v. *Downs*, 3 Mo. App. 468.

E. T. Farish, for respondent.

Hayden, J., delivered the opinion of the court.

The present cause of action has been before this court. *Curran* v. *Downs*, 3 Mo. App. 468. When that case went back, the plaintiff took a nonsuit, brought the present action, based upon the sale and delivery of the same whiskey, and the defendant pleaded substantially the same matter which gave rise to the legal question decided by this court. Upon the trial below, there was a verdict for the defendant Spalding, the suit having been dismissed as to the defendant Downs. The present appeal rests on the following grounds:

The plaintiff testified upon the trial that he did not personally know of the sale of the whiskey until after it was sold; that one O'Donnell, his book-keeper, acted for the plaintiff in making the sale and delivery; that " plaintiff is not able to state whether or not the whiskey in question was sold and delivered without the government tax having been paid." On the basis of such testimony, it is contended that there was evidence tending to show a sale of the whiskey, which, so far as the plaintiff was concerned, involved no violation of law, and was made without any agreement on his part to remove the whiskey without paying the government tax. The plaintiff accordingly complains of the court's refusal to instruct the jury that although they should believe that the whiskey was removed from the distillery without the tax being paid, or if the jury believe the book-keeper sold or delivered the whiskey without informing the plaintiff that it was sold and to be removed without paying the tax, then the defence failed that the whiskey was removed from the warehouse before the tax was paid.

There is no basis either of fact or of law for the plaintiff's objection. The only inference that can be drawn from the plaintiff's own testimony is that he was a party to this fraud upon the government, as the jury found that he was. A particular sentence, in itself ambiguous, is not to be wrenched from the context of a plaintiff's testimony; and an instruction based upon the supposition that such testimony stood by itself would of course have a false foundation. A witness's testimony, especially that of a plaintiff making out his own case, is to be taken together; and it by no means follows that every proposition he utters, even in itself unambiguous, contains evidence to support an instruction. Such proposition may be contradicted by the tenor of his testimony; and this was the fact here. If this whiskey did not pay the tax, — and the plaintiff does not pretend to say it did, — the fair inference from his own testimony is that he was as much a party to the fraud as the book-keeper.

But, admitting the fact contended for, there is yet no basis in law for the instruction. The book-keeper, O'Donnell, who, as the plaintiff expresses it, "acted for the plaintiff" in making the sale and delivery of the whiskey, was the agent, and in fact the partner, of the plaintiff, and the knowledge of the agent was the knowledge of the principal. It ought not to be seriously contended that of two men who bore the relation of partners to each other in defrauding the government, and who divided the gains of their fraud, one should obtain the interposition of a court of justice to secure to him a part of those gains, on the ground that the other was a more immediate participant than he in the fraud of a particular transaction.

The question involved is not a question of contract or intent, but of a prohibition of positive law. In *Curran* v. *Downs*, *supra*, the agreement to deliver the whiskey was spoken of because the question was there one of pleading, and the matter was so pleaded. But the principle is, as then stated, that a court will not interfere in favor of a party whose cause of action is founded in a violation of positive law. With Congress lay the choice of means of accomplishing the collection of the tax on whiskey; and it saw fit to prohibit and make positively unlawful the act of the distiller in permitting distilled spirits to be removed from his distillery, as these were removed from that of the plaintiff. The obligation was upon persons who chose to engage in distilling spirits, and it was they who were under the ban of the law. Having violated, or failed to fulfil, obligations thus imposed, the plaintiff brings a suit which is based on that violation. The court refuses to interpose in favor of either party, and leaves the matter where they left it.

The unlawful act of removing the whiskey could not be made more unlawful by reason of the plaintiff's agreeing to remove it without paying the tax, and the agreement or intent was accordingly immaterial. Still, the injection of this element into the court's instruction did no harm, but

was favorable to the plaintiff. The jury were, in effect, told that the plaintiff should recover unless he sold and delivered the whiskey without paying the tax, and without intending to pay it, and the burden of showing that the tax had not been paid was on the defendant.

Though the witness Downs was permitted to answer the question in regard to defendant's cash-book, yet all which was drawn out was that the entries "did not seem to be anywhere." The matter of the books, and the fact that two sets were kept,— one for lawful and another for unlawful sales of whiskey,— was brought out by the plaintiff, whose witness Downs was; and the real defendant, Spalding, had a right, on cross-examination, to sift the supposition of Downs, that this whiskey was "straight" whiskey. The statement of Spalding that the sale of this whiskey was entered in the books — afterwards lost — of unlawful sales, was not objected to at that time, and the court below may have refused to strike it out on this ground. If so, and if after taking the chance of a statement favorable to him, and losing his chance, the plaintiff unsuccessfully moved that that unfavorable part be stricken out, this court will not reverse the case. It devolves on the plaintiff to show that error was committed, not that error may have been committed.

The judgment is affirmed. Judge LEWIS concurs; Judge BAKEWELL did not sit.