PRIDDY et al., Plaintiffs in Error, v. MACKENZIE.

**Division One, June 29, 1907.**

1. **CHANGE OF VENUE: Untimely Application.** Where the record shows that plaintiffs knew, long before the filing of their application for a change of venue, all the facts stated therein, and could have filed it sooner, the application should be denied.

2. ———: ———: **Knowledge of Attorney.** And knowledge of applicants' attorney of the facts stated in their application for a change of venue was their knowledge.

3. ———: **Interested Judge.** Though the interest of the judge in the result of the litigation be never so small or trifling, it is sufficient to disqualify him to sit in the case.

4. ———: ———: **Abstract of Title: Opinion by Partner.** Where it is shown on the trial that a member of the firm of lawyers, of which the trial judge was at the time a member, gave a written opinion to defendant that the abstract showed a good title in defendant's grantor and on the faith of that opinion and certificate defendant bought the land, the judge, within the meaning of the statute, is "interested" in the cause of action, to have the deed set aside, and should grant a change of venue, whether he had any knowledge of the examination made and opinion given by his partner or not. For, if defendant should lose and it were afterwards shown that his partner was negligent in the investigation of the title, the firm, and consequently the judge who was a member thereof, though without knowledge of the opinion and examination, would be liable in damages.

5. **CONSOLIDATION OF SUITS: Ejectment.** It is error for the court to consolidate nine suits in ejectment based on the disaffirmance of a deed made by minors, where the defendants are different, the evidence different, and defendants employ different counsel, although the plaintiffs in each are the same and have the same attorneys.

Error to Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*Samuel P. Forsee, Wm. C. Forsee* and *H. H. McCluer* for plaintiffs in error.

(1) The conclusions of law drawn by the court absolutely ignore the rulings of this court in the Linvill-Greer case, where every salient and dispositive fact herein involved was determined by Division Two of this court. Linvill v. Greer, 165 Mo. 380. (2) When the fact developed at the trial of the case that Judge Gibson had been of counsel and the firm to which he belonged had passed judgment on the title in question, he was disqualified to proceed further in the trial of the cause. The development of that fact nullified any further procedure taken by respondent in the cause. Tearce v. Atwood, 13 Mass. 339; Stockwell v. Town Board, 22 Mich. 345; Gravel

Min. Co. v. Keyser, 58 Cal. 315; Hillborne v. Camp-
bell, 23 Pac. 122; East Rome Town Co. v. Cathran,
81 Ga. 367; Moses v. Julian, 45 N. H. 58; Davis v. Al-
len, 11 Pick. 466; Templeton v. Giddings, 12 S. W. 851.
(3)   The refusal by Judge Gibson to allow plaintiffs
a change of venue was reversible error.   The cases
should have been sent for trial to some other county.
If we are mistaken in this they should have at least
been transferred to some other division of the same
court.   State v. Flourney, 160 Mo. 324; State v. Leh-
man, 182 Mo. 459; Newcomb v. Railroad, 182 Mo. 713;
Dawson v. Dawson, 29 Mo. App. 521; State ex rel. v.
Fort, 178 Mo. 519; Lacey v. Barrett, 75 Mo. 469.   (4)
The court erred in trying all the cases as if consolida-
ted.   They were consolidated in substance if not in fact.
Sec. 750, R. S. 1899.   The court's failure to make an
order consolidating the cases was an evasion of said
section 750, and an unwarranted deprivation of plain-
tiffs' right to have a separate trial of their cases.   At
common law, before there could be a consolidation of
actions it was necessary that there be the same plain-
tiffs.   Second, the same defendants.   Third, the action
must be such as can be joined.   4 Ency. Pld. & Prac.,
674; Knight v. Ogden, 3 Tenn. Ch. 409.   In England the
right to consolidate is denied to exist in the chancery
court.   Foreman v. Blake, 7 Price 654.·   When the same
defense does not apply, consolidation will be refused.
4 Ency. Pld. & Prac., 679.   Neither by common law nor
under the statutes can cross-actions be consolidated.
Harns v. Sweetland, 48 Mich. 110; 4 Ency. Pld. & Prac.,
696; Story, Eq. Pl. (6 Ed.), sec. 287; Knight Bros. v.
Ogden Bros., 6 C. L. J. 27.

C. O. Tichenor, O. H. Dean and Lathrop, Morrow,
Fox & Moore for defendant in error.

(1)   The court properly overruled the application
for a change of venue.   Secs. 821-822, R. S. 1899; 3

Am. and Eng. Ency. Law (2 Ed.), 320; Bank v. Hoeber, 88 Mo. 37; State to use v. Matlock, 82 Mo. 455; Wolff v. Ward, 104 Mo. 127; Railroad v. Holladay, 131 Mo. 440; Bartley v. Railroad, 148 Mo. 124; Cole v. Armour, 154 Mo. 333; McCormick v. Railroad, 154 Mo. 191; Feary v. Railroad, 162 Mo. 75; State v. Blitz, 171 Mo. 530; State v. Lehman, 182 Mo. 424; State ex rel. v. Evans, 184 Mo. 632; Eudaley v. Railroad, 186 Mo. 399; Guy v. Railroad, 197 Mo. 174; Priddy v. Boice, 99 S. W. 1055; State ex rel. v. Lubke, 29 Mo. App. 555; Smith v. Railroad, 31 Mo. App. 135; Summers v. Ins. Co., 45 Mo. App. 46; Walker v. Evans, 98 Mo. App. 301. (2) Judge Gibson was not disqualified to try the case. Secs. 819, 1679, R. S. 1899; 17 Am. and Eng. Ency. Law (2 Ed.), 733, 741; 23 Cyc., 576, 578, 596; Bowman's case, 67 Mo. 146; State v. Moore, 121 Mo. 514; DeHatre v. Edmunds, 98 S. W. 744; Bank v. Fitzsimons, 2 Binn. (Pa.) 454; Taylor v. Williams, 26 Tex. 583; Railroad v. Ryan, 44 Tex. 426; New Odorless Sewerage Co. v. Wisdom, 30 Tex. Civ. App. 244; King v. Sapp, 66 Tex. 519; Railroad v. Mackney, 83 Tex. 410; Cleghorn v. Cleghorn, 66 Cal. 309; Wolfe v. Hines, 93 Ga. 329; In re Nevitt, 117 Fed. 448; Keefe v. Bank, 177 N. Y. 305; Ex parte State Bar Assn., 92 Ala. 113; Ellis v. Smith, 42 Ala. 349; Peck v. Freeholders of Essex, 20 N. J. L. 457; Grigsby v. May, 84 Tex. 240; Oakland v. Oakland Water Front Co., 118 Cal. 249; Foreman v. Marianna, 43 Ark. 324; State ex rel. v. Maio, 58 Atl. 173; State ex rel. v. Woodson, 86 Mo. App. 253; Heinilen v. Heilbron, 97 Cal. 101; Philadelphia v. Cox, 64 Pa. St. 169. (3) The court committed no error in trying the cases together. Thompson, Trials, sec. 210; Ins. Co. v. Hillmon, 145 U. S. 285; Den v. Fen, Halst. 335; Witherlee v. Ocean Ins. Co., 24 Pick. 67; Jackson v. Stiles, 5 Cow. 282; Springfield v. Sleeper, 115 Mass. 587; Wiede v. Ins. Co., Fed. Cas. No. 17617.

WOODSON, J.—The plaintiffs instituted this suit in the circuit court of Jackson county, Missouri, against defendant, seeking to have a certain deed of conveyance, described in the first count of the petition, set aside and held for naught, because of the alleged claim that the grantors were, at the time of its execution, minors, and had, after attaining their majority, disaffirmed the same, and ask that it be declared null and void, and because it casts a cloud upon the title to their lands.

The second count was an ordinary petition in ejectment, asking for the possession of the land described in the deed and damages for the unlawful withholding the possession from plaintiffs, and for the monthly rents and profits.

The first count was substantially as follows: Thomas Jones departed this life in 1843, intestate, owning, among other, the land in controversy, and left surviving him his widow, Martha Jones, and nine minor children; two of those children were Nancy and Elizabeth Jones; in 1850 the former married James J. Priddy, and the latter, in 1854, William Linville. At the death of Thomas Jones he owned a large tract of land in said county, and in proper time and in due form fifty-odd acres of it was assigned and set off to his widow Martha Jones, as her dower, a portion of which are the lots in question. The widow died in 1868, and James J. Priddy died in July, 1869, and his wife, Nancy, departed this life on April 10th, 1892, and Elizabeth Linville died November 3rd, 1892. Martha Jones occupied the dower land until death, and on May 5th, 1853, Nancy Priddy and her husband and Elizabeth Jones, then minors, executed a deed to Lott Coffman in which they attempted to convey all their interests, being two-ninths of the fifty-odd-acre tract, to said Coffman; that long before the institution of this suit, the plaintiffs, who are the lineal descendants of Nancy

Priddy and Elizabeth Linville, disaffirmed said deed and gave record notice thereof; that both Nancy and Elizabeth also disaffirmed said deed prior to their demise; that defendant, through mesne conveyances from Coffman, had acquired the legal title and was in the possession of lots one to ten, both inclusive, of Independence Avenue Addition, which are a part of the same lands described in the Priddy and Jones deed to Coffman of May 5th, 1853; that in 1852 James J. Priddy conveyed his estate, by the curtesy, to said Lott Coffman.

The prayer is for cancellation of the deed to Coffman, and for the ascertainment and determination of the interests of all parties to the suit in and to the land in controversy, and for general relief.

The defendant's answer was:

First: A general denial.

Second: The thirty-year Statute of Limitations.

Third: That Nancy Priddy and Elizabeth Jones were, each, over twenty-one years of age on May 5th, 1853, when they executed the deed to Coffman, and that said deed was valid and conveyed all their right, title and interest in and to said land to Coffman, and that he had lawfully acquired Coffman's interests in said lots.

Fourth: An estoppel, and

Fifth: A prayer for the cancellation of a power of attorney executed by James J. Priddy and Nancy Priddy, his wife, to S. P. Forsee, authorizing him to sell certain property, including the lots in controversy, and to sue and recover the possession of the same.

Sixth: And that the deed, dated May 5th, 1853, from Nancy Priddy and husband, and Elizabeth Jones to Lott Coffman, be adjudged valid and in full force and effect, and sufficient to and did convey all their

rights, title and interest in and to said land to said Coffman, and for general equitable relief.

The record in this case shows that there were eight other suits pending at the time, in the various divisions of the circuit court of Jackson county, instituted by these same plaintiffs but against different defendants, all of whom were in possession of different tracts or portions of the land conveyed by Nancy Priddy and husband and Elizabeth Jones to Lott Coffman on May 5th, 1853, all involving the validity of said deed. The answers in all of those cases were substantially the same as the one in this case. This and one other of the nine cases were pending in division number one of said court, which was presided over by Judge Gibson, and the other seven were pending in the other divisions thereof. On June 25th, 1903, all of the cases, over plaintiffs' objections, were transferred to division one of said court; that on June 26th, the next day, plaintiff filed an application for a change of venue in each case. The one filed in this case, formal parts omitted, was as follows:

"Come now the plaintiffs in the above-entitled cause and move the court to grant them a change of venue thereof to some other county than Jackson county, and assign as causes therefor the causes set out in the affidavit, hereinafter made and attached, and made a part of this application.

"S. P. FORSEE,
Attorney for Plaintiffs."

"State of Missouri, County of Jackson, ss.

"Before the undersigned notary public within and for the county and state last aforesaid, this day personally appeared Mattie Linville and W. P. Linville, who being by me first duly sworn on oath say they are two of the plaintiffs in the above-entitled cause, and make this affidavit in behalf of themselves and of all of said plaintiffs.

"The affiants have just cause to believe, and do believe, that none of the plaintiffs can have a fair and impartial trial in said cause before either the Honorable James Gibson, the Hon. James H. Slover, the Hon. W. B. Teasdale, the Hon. Shannon C. Douglass or the Hon. Andrew F. Evans, judges of division one, two, three, four and five, respectively, of the circuit court of Jackson county, Missouri, because said judges and each of them is prejudiced against said plaintiffs and each of them, and because the opposite party, defendant herein, has an undue influence over the minds of each of said judges.

"Third: Because the inhabitants of said county are prejudiced against each of the said plaintiffs.

"Fourth: Because the said defendant herein, the opposite party herein, has an undue influence over the inhabitants of the said county; that affiants obtained their information and knowledge of the exercise of the undue influence of the said defendant over the minds of the said judges and each of them, on the 25th day of June, 1903; that affiants obtained their information and knowledge that the opposite party, the defendant herein, has an undue influence over the inhabitants of the said county on the 25th day of June, 1903.

"Affiants further state that they have received on this 25th day of June, 1903, after four o'clock p. m., further and additional evidence and information of each of the causes alleged as aforesaid in this application for a change of venue in this cause, and that they believe if said cause is tried in said county, it would be impossible for any of the plaintiffs in this cause to have a fair and impartial trial in said cause before any of the judges above named or any other judge that might be elected or agreed upon, or before any of the inhabitants in said county, for the reasons aforesaid."

All of said applications were continued until June 30th, same month. On the last-mentioned date the court

overruled each and all of them, to which plaintiffs duly excepted.

Defendants then announced ready for trial in all the cases. Plaintiffs stated that they did not understand that they were set down for trial at that time as there was a demurrer pending in each case to the cross-bill.

"The Court: I will overrule the demurrers right now."

Plaintiff replied that the court set the applications for a change of venue for to-day and that the demurrers would be taken up on law day.

"The Court: I did not say I would not hear the cases to-day. I told you that I would hear anything that came up in reference to the cases."

Plaintiffs in reply asked, "Are we trying one or all of them?" The Court: "I am going to try all of them." Plaintiffs objected to the trial of these cases at that time, because there were demurrers pending to each of the cross-bills, and plaintiffs were surprised at the action of the court. And counsel for plaintiffs stated: "The plaintiffs being surprised at the action of the court in overruling the applications for a change of venue and because the plaintiffs did not understand that the cases were set down to be tried on the merits at this time, and there being demurrers pending in the cases, and as this is not a law day on which such demurrers should be taken up under the rules of the court, we ask your honor to give us a short time to prepare applications for continuance in the cases." Upon the consideration of the matter the court gave the plaintiffs until 1:30 to prepare an application for a continuance. At 1:30 p. m. the following occurred:

"Mr. Forsee: The plaintiffs object to the court trying all of these cases at one time or to a consolidation of these cases because there is nothing in the law

providing for a consolidation thereof and because the parties are not the same, nor is the evidence.

"The Court: The court says that he will hear them all together, but keep a separate record, there being some points in each case peculiar to it and those points will be governed respectively, and the testimony common to all the cases will be heard at one time.

"Mr. Forsee: My opinion is these are cases that cannot be heard that way and I want to make this record objection thereto. Mr. Moore says he prefers to offer testimony common to all cases first and afterwards testimony peculiar to each particular case.

"The Court: Let it be so ordered.

"The court overrules Mr. Forsee's objection and plaintiffs except."

Plaintiffs then filed and presented their motions for a continuance in all of said cases, and after having considered same the court overruled them, to which action of the court the plaintiffs duly excepted.

Plaintiffs then asked permission of the court to file amended answers to the cross-bills, which request was by the court refused, and plaintiffs duly excepted.

Defendants then announced ready for trial upon all of the cross-bills and introduced evidence tending to prove and establish allegations thereof, and rested their cases.

That during the progress of the trial the evidence showed that the witness, W. D. McLeod, was a member of the firm of Warner, Dean, Gibson & McLeod, engaged in the practice of law at Kansas City, Missouri; that the Gibson mentioned was the same Judge James Gibson who later tried this cause; that during the existence of that copartnership, James MacKenzie, the defendant in this case, was a client of that firm, and at his request Mr. McLeod examined the title to the lots involved in this suit, and that the deed from

Nancy Priddy and husband and Elizabeth Jones to
Lott Coffman, dated May 3, 1853, being the same deed
now in question, formed a link in the chain of that
title; that he passed upon the title and gave a written
opinion to Mr. MacKenzie, holding the title was good,
signed by the firm name; that upon the strength of
that opinion Mr. MacKenzie purchased the property
and paid McLeod a fee for his services for making the
examination, and that the firm received the fee so
paid to Mr. McLeod. It was not contended that Judge
Gibson knew of the services rendered by McLeod to
MacKenzie until McLeod testified to the fact upon the
witness stand. When that fact appeared in the trial,
counsel for plaintiffs presented to the court a written
protest, reciting those facts, duly verified, against
Judge Gibson's further trial of the cause, and
prayed for a change of venue to some other circuit.
The court refused the second application for a change
of venue, and placed his refusal upon the ground that
he knew nothing whatever of the services rendered
to MacKenzie by McLeod in the firm name until Mc-
Leod testified to the fact in the trial of this case, and
for that reason continued to try the case. Neither the
plaintiffs nor their counsel had any knowledge of those
facts prior to the time McLeod testified to them.

To the action of the court in refusing said change
of venue, and in proceeding with the trial, plaintiffs
duly excepted.

Plaintiffs then renewed their objections to the
court's hearing any further evidence in the cause, be-
cause it should have granted the change of venue, and
that it had no power to try the said nine cases together,
which objection was by the court overruled, and the
plaintiffs duly excepted.

Thereupon, the plaintiffs offered evidence to dis-
prove the allegations of the cross-bills.

The court then gave in behalf of defendants seven

declarations of law. To the giving of which plaintiffs duly objected and excepted.

From the view we take of the case, it is unnecessary to incorporate them in this statement.

The court then found the issues for the defendants in all the cases, and rendered a separate decree in each of the nine cases in conformity to the prayer contained in each cross-bill. To which findings and decrees the plaintiffs duly excepted and filed their motions for a new trial and in arrest of judgment in each case, which were by the court overruled and plaintiffs duly excepted, and have sued out a writ of error from this court, and the cause is now here for review.

I. There are many questions presented by the record in this case, but we will consider but two of them, because the other points should be passed until the plaintiffs have an opportunity to fairly present their side of them to the trial court, which was not and could not have been done in a trial of all nine of the cases together, and in the condition the record discloses they were in at the time of trial. The points fairly before this court are, first, the application for the change of venue, and, second, the right of the trial court to try all of the cases together. We will dispose of those questions in the order presented.

The application for a change of venue was filed on the 26th of June, the day the cases were called for trial, and continued until the 30th. Defendants contend that the application was not filed in time, and for that reason the court properly denied the change. The record upon that question discloses that in the case of Priddy v. Boice, the plaintiffs being the same as those in this case, and involving the same issues, and for the recovery of a portion of this same tract of land, long prior to the filing of this change of venue, a similar application had been filed disqualifying Judge Gibson, the same judge who tried this case, and that he

granted the change prayed for in that case. That application shows conclusively that the plaintiffs were cognizant of all the facts stated in this application long before this one was filed; but plaintiffs try to escape the effect of that knowledge by contending that W. P. Linville was not a party to the first suit. The record in this case shows that his name appeared as one of the plaintiffs in the caption of the application filed in that case. No other portion of the record in that case is before us, so we must presume he was a party to that suit and had knowledge of all the matters stated in that application.

We are of the opinion that the court did not abuse its discretion by overruling this application for a change of venue, because it was not filed in time. [Wolff v. Ward, 104 Mo. 127; Railroad v. Holladay, 131 Mo. 440.]

The change of venue was also properly refused, because counsel for plaintiffs knew ever since the filing of the application for a change in the Boice case, that Judge Gibson and the other judges were prejudiced against his clients, as shown by that application, and his knowledge as their attorney was their knowledge. In view of that fact the application was not filed in time. [Bank of Commerce v. Hoeber, 88 Mo. 37.]

But there is a more serious question presented by the protest and the second application for a change of venue, made and filed by the plaintiffs during the trial of the cause, based upon the alleged interest of Judge Gibson in the cause as shown by the evidence of Mc-Leod.

The statute governing this question is as follows:

"If the judge is interested or related to either party, or shall have been of counsel in the cause, the court or judge shall award such change of venue without any application from either party, unless all the

205 Sup—13

parties in the cause consent that such judge may sit on the trial thereof, or a special judge for the trial thereof be agreed upon by the parties, or elected in the manner provided by law.'' [R. S. 1899, sec. 819.]

The question here presented is, was Judge Gibson interested in the cause within the meaning of that statute? If he was so interested, then the change of venue should have been granted under that showing to some other division of the court; but if he was not, then the application was properly denied.

If plaintiffs should succeed in this litigation and recover the property in controversy from MacKenzie, and if it should hereafter be shown that McLeod, a member of the firm of Warner, Dean, Gibson and McLeod, was negligent in the investigation of the title to the property, and as a result MacKenzie lost the property, then the firm and each and every member thereof would be civilly liable to him for the damages sustained by him on account of that negligence. [Simpson v. Schulte, 21 Mo. App. 639; 4 Cyc. 966, par. IV; Savings Bank v. Ward, 100 U. S. 195; 4 Cyc. 964, c.]

While it is not pretended that Judge Gibson had any knowledge of the examination of the MacKenzie title by McLeod, yet that fact would not relieve him from his and the firm's liability for the damage occasioned by the negligence of McLeod. One cannot avoid liability for the acts of his partner in the ordinary business of the firm on the ground that he did not know of such acts. [Curran v. Downs, 7 Mo. App. 329.]

In discussing this question, the Supreme Court of Georgia used this language: ''It is urged upon us that as Judge Underwood was absent when the business was transacted by his copartner in the firm name, and knew nothing of it, and never received any compensation for the service which his copartner in the

name of the firm rendered, and did not become judge until long afterwards, he was free from disqualification; but we think otherwise. What his partner did in the firm name was done by the firm, and upon the firm responsibility, and this was so whether compensation was charged or not." [East Rome Town Co. v. Cothran, 81 Ga. 359, 367.]

It is the interest that disqualifies the judge; though it be ever so small and trifling, it is sufficient.

In a case in Massachusetts, a suit was brought to recover a penalty due a municipality of which the justice was an inhabitant, PARKER, C. J., in passing upon the incompetency of the justice, used this language: "It is very certain that, by the principles of natural justice, of the common law, and of our Constitution, no man can lawfully sit as a judge in a cause in which he may have a pecuniary interest. Nor does it make any difference that the interest appears to be trifling; for the minds of men are so differently affected by the same degree of interest that it has been found impossible to draw a satisfactory line. Any interest, therefore, however small, has been held sufficient to render a judge incompetent." [Pearce v. Atwood, 13 Mass. l. c. 340.]

I have been unable to find a case in this State where this court has gone so far as the case last cited, in holding the judge is disqualified from trying a case because the municipality in which he resides is a party. This court has, however, repeatedly held in actions against counties and cities that tax-paying inhabitants thereof are not competent jurors on account of interest in the cause. [Eberle v. St. Louis Public Schools, 11 Mo. 247; Fine v. St. Louis Public Schools, 30 Mo. 166; Rose v. St. Charles, 49 Mo. 509; Fulweiler v. St. Louis, 61 Mo. 479.]

And as such was the law of this State in so far as jurors were concerned until it was changed by express

statute in 1855. [R. S. 1855, p. 503, sec. 9; R. S. 1899, sec. 3790.]

Since the enactment of that statute qualifying jurors in such cases, the probabilities are the courts would not go to the same length to disqualify a judge from trying a case on account of interest as the Massachusetts court went, and as this court went in the cases which held the jurors were disqualified. But be that as it may, the cases from this State and that show the high degree of disfavor with which the law looks upon trials conducted by interested parties.

The authorities cited by counsel for defendant do not mitigate against the rule of law just announced.

We are clearly of the opinion that Judge Gibson was interested in the cause within the meaning of the statute, and was on that account disqualified from trying the case. While it was not necessary for the plaintiffs to have filed the second application for a change of venue in this case, because said section of the statute expressly requires the judge to award the change of venue without application and upon his own motion whenever he is an interested party; but as he refused to do so, it was not improper to file the second application.

II. The record in this case shows that there were nine of these causes pending in the various divisions of the circuit court of Jackson county on June 25, 1903 — this and one other were pending in Judge Gibson's division, and on that date, by agreement of the judge from each of the other divisions with Judge Gibson, all seven cases were transferred to his division, and on the next day all were called for trial; and after various motions were filed, and objections made, the cases were set over to June 30. On that day, when the cases were called for trial, the plaintiffs objected to the court trying all the cases together, because there was no law providing for a consolidation thereof and because the

parties are not the same, nor is the evidence. This objection was by the court overruled, and to that action of the court plaintiffs duly excepted, and assign that ruling as reversible error.

In the absence of a statute governing such procedure, the authorities of this country are conflicting upon that question.

The defendants contend that it is within the sound discretion of the trial judge to consolidate several actions, based upon or growing out of the same subject-matter, brought by the same parties against several defendants, although defendants employ different counsel, and the evidence in each case is different. [1 Thompson on Trials, sec. 210.]

In the Massachusetts case, the facts were: three actions on contract, based upon the following instrument in writing and signed by the defendants: "Provided the city will place granite curb-stones around the large trees on North Main street for the purpose of protecting them, we, the subscribers, hereby agree to pay to the city the cost of the curb-stones so placed opposite our land on our side of street." In passing upon the right to order a consolidation of the three actions, based upon that contract, the Supreme Court of that State held, that it was within the discretion of the presiding judge to order the several actions consolidated and to try them together, although defendants employed different counsel, and the evidence in each case was different. [Springfield v. Sleeper, 115 Mass. 587.]

The same question came before the Supreme Court of New Jersey, where several actions of ejectment were brought by the lessor of the plaintiff upon a mortgage against a number of defendants, and EWING, Chief Justice, speaking for the court, said: "The principle upon which consolidation is ordered is, that the same question is to arise in all the actions. The object of

consolidation is laudable. It is to save costs, and if we can secure to the parties all their rights and at the same time prevent unnecessary costs, it is desirable. The doctrine on this subject in the English books is somewhat incongruous. There is a case in 2 Strange, 1149, Smith v. Crabb, where the court refused to consolidate several declarations in ejectment, although it was suggested that the title was the same in all, assigning as a reason for refusal that the lessor might have sued the defendants at different times, and it would be obliging to him to go on against all, when, perhaps, he might be ready in some of them only. But in the case of Grimstone v. Burgers, Barnes' Notes, 176, the Court of Common Pleas ordered sixteen ejectment suits to be consolidated into one. And in the case of Doe ex dem. Pultney and others v. Freeman and others, on a rule to show why the proceedings in thirty-seven actions of ejectment brought against the occupiers of so many houses in Sackville street, should not be stayed, and abide the event of a special verdict, Lord KENYON said it was a scandalous proceeding; that all the causes depend on the same title and ought to be tried by the same record, and ordered the rule to be made absolute. [2 Sell. Prac., 144; 2 Arch. Prac., 180.] All these cases assert the power of the court to consolidate in actions of ejectment. Our practice act, Rev. Laws, 421, sec. 58, gives a general power to consolidate unnecessary actions. The authority of the court extends to ejectment as well as other actions, but in its exercise in the former more difficulty exists and greater caution is required; for though the title of the lessor be the same, yet where the defendants are different they may have different defenses. And if the actions are consolidated and the plaintiff recover, and afterwards obtain judgment for the mesne profits, one of the defendants, if another be unable, will be compelled to pay the whole. Not-

withstanding, however, these difficulties, the court has the power and ought in a proper case be consolidated. We think this is such a case and shall therefore make the order, imposing on the defendants proper terms. There are two modes in which this purpose is effected; the one where the actions are actually consolidated, and the other which may be called a *quasi* consolidation, where one action is tried and the rest are ordered to abide its event." [Den v. Fen, 9 N. J. L. 335; Jackson v. Stiles, 5 Cow. 282.]

Another case which arose in Massachusetts was assumpsit on a policy of insurance for ten thousand dollars, made by the defendants on the ship Antioch, for the plaintiffs, who were owners of one-half of her. After all the evidence was put into the case, the trial judge, before he charged the jury, ordered that at the same time and on the same evidence the case of one Adams, a part owner of the ship, against the same defendants on another policy, should be submitted to the same jury. The cause was appealed to the Supreme Court, and it was there held that, where there are several actions in favor of different plaintiffs but against the same defendant, and depending on the same evidence and managed by the same counsel (which was the fact in the case at bar) it is within the discretionary power of the judge, notwithstanding objections on the part of the defendant, to order the actions to be put to the same jury at the same time. [Witherlee v. Ocean Ins. Co., 41 Mass. 67.]

The same point passed upon in the last-mentioned case came before the Supreme Court of the United States, where several actions were pending upon policies of insurance issued by different companies upon the life of the same individual, but that ruling was based largely upon a statute of the United States. [Mutual Life Ins. Co. v. Hillmon, 145 U. S. 292.] The

rule announced in this case has but little weight in the disposition of the question now under discussion, because it was based upon a statute.

This position, or contention of defendants, that the trial court had the power and authority to order a consolidation of these cases, and try them all at the same time, and upon the same evidence, is most vigorously assailed and controverted by counsel for the plaintiffs. In the first place, he contends that such has never been the practice in this State, and that there is no statute of this State or decision of this court which gives sanction to such practice.

Counsel for neither party have cited us to any authority of this State authorizing a consolidation of actions, except those mentioned in section 749, Revised Statutes 1899.

In a case which came to this court, two suits had been consolidated: one was a bill in equity instituted by the grantor in a deed against the grantee, seeking to have it set aside on the ground that the grantee had broken certain covenants and agreements for support and maintenance therein contained, which constituted the consolidation of the deed; and the other was an action at law, brought by the grantee against the grantor to recover damages alleged to have been sustained by him for having been deprived of the possession of the land described in said deed. The abstract of record states that the court of its own motion consolidated the two suits, but the abstract failed to show any such order was in fact made. In the discussion of the question suggested, VALLIANT, J., said: "The only authority in our code for the consolidation of suits is contained in section 2189, Revised Statutes 1889, *idem,* section 749, Revised Statutes 1899, which is as follows: 'Whenever several suits founded alone upon liquidated demands, shall be pending in the same court by the same plaintiff, against the same

defendant, or whenever several such suits are pending in the same court, by the same plaintiff against several defendants, the court in which the same shall be prosecuted may, in its discretion, if it appear expedient, order such suits to be consolidated into one action.' Neither of these suits was of the character referred to in that section. . . . It was error to have ordered their consolidation." [Anderson v. Gaines, 156 Mo. 668, 669.]

While it is true the learned judge who wrote that opinion said that "the only authority in our code for the consolidation of suits is contained . . . in section 749, Revised Statutes 1899," yet the spirit and meaning of the decision is, that that statute is the only authority in this State which authorizes the consolidation of actions. The fact that the order of consolidation was held to be erroneous was equivalent to stating that no other authority authorizing such a practice existed in this State; because, if the common law practice of consolidation relied upon by defendants had existed in this State, then the order of consolidation in that case would not have been held erroneous without, at least, having considered the common law rule. This question was not presented, nor considered by Judge VALLIANT, but he assumed the statute mentioned was the sole authority in this State authorizing the consolidation of actions by the trial courts.

In our judgment that assumption was correct, because the very object and purpose of the practice act was to simplify and codify the common law pleadings and practice, and whenever the statute prescribed a rule of procedure, in the absence of a contrary intention appearing, that rule should be held to be exclusive and not cumulative; otherwise we would have both the common law and statutory procedure in force at the same time, as is the effect of the contention in this case.

We, therefore, hold the action of the court, ordering a consolidation of the causes mentioned in this record, and trying them at the same time, and largely upon the same evidence, was reversible error.

III. This cause and the case of Priddy et al. v. Minerva J. Hayes et al., pending in this court, were, by stipulation of counsel, argued and submitted together; but as there are some material differences between the two cases, a separate opinion will be necessary for the proper disposition of that case.

Because of the errors pointed out by this opinion, the judgment of the circuit court is reversed and the cause remanded for a new trial.

All concur.