## Hess' Adm'r v. Louisville & N. R. Co. et al.

(Decided June 6, 1933.)

CHARLES W. MORRIS, JOS. A. GREENE and OSCAR LEIB-SON for appellant.

WOODWARD, HAMILTON & HOBSON, ROBERT P. HOBSON and ASHBY M. WARREN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This appeal presents for review the trial of an action for death at a railroad crossing. The jury returned a verdict for the Louisville & Nashville Railroad Company, and the administrator is here insisting he is entitled to a reversal for errors in refusing and giving of instructions, and because of the misconduct of a juror.

Formerly there was a flag station maintained by the railroad company at the junction of its right of way and a private road, running at right angles from the old Third Street road, Louisville, Ky., to property occupied by D. J. Pearson. In February, 1930, James Hess, in his automobile, was traveling this private roadway, going from the old Third Street road to the home of D. J. Pearson. Approaching the crossing from the old Third Street road, to the right, there is a cut 500 feet from the crossing. The top of the cut is 9 feet above the top of the rail. Also to the right of the crossing is a shelter house, 6x10.5 feet, located 15 feet from the rail. The residence of Pearson is 627 feet from the crossing to the right, on the opposite side of the railroad from the shelter house.

On the day of his death, James Hess was observed by the occupants of the home of Pearson, driving slowly his automobile on the private road leading from the old Third Street road toward the crossing. He went slowly up on the crossing as the train came through the cut, and, when the front wheels of his machine passed over the rail, he stopped as if trying to get it off the track. The testimony as to the signals given by the train is conflicting. To consider the correctness of the instructions and the conduct of the juror, of which complaint is made, it is unnecessary to detail the evidence. It is

sufficient to say that it authorized a submission of the case to the jury.

The administrator offered instructions on the theory that the private road had been so used by the public such a length of time that those operating the train had reasonable grounds to anticipate the presence of persons or vehicles upon the track, and that, by reason thereof, it was the duty of those in charge of the engine to give reasonable warning of the approach of the train by sounding the whistle, to run the train at a reasonable rate of speed, taking into consideration the locality and surroundings of the crossing, and to exercise ordinary care generally so to run and operate the train as to avoid coming in collision with persons and vehicles on the crossing. The court declined to give instructions presenting this theory.

On his own motion the court instructed the jury it was the duty of the railroad company and those in charge of its engine to give the signals which were customarily and usually given of the approach of trains to Gardner crossing, and, if they failed to discharge this duty and, by reason of such failure, Hess was thereby killed, to find for the administrator. An instruction was given defining the duty of Hess when approaching the railroad track at the crossing, and directed the jury if it believed from the evidence that Hess failed in any one or more of the duties set out in the instruction, and thereby so contributed to cause or bring about the collision, and that but for such failure the collision would not have occurred, and he would not have been killed, to find for the defendants.

A map and photographs, together with the testimony of the witnesses describing the crossing and its location and surroundings, show that the crossing was not hazardous or dangerous, but merely an ordinary one. The evidence does not show that the private road leading from the old Third Street road was used by the traveling public, except when going to and returning from the home of Pearson, a private residence. It is not shown that the private road extends beyond Pearson's residence. The facts of the case do not bring it within the rule stated in L. & N. R. R. Co. v. Locker's Adm'rs, 182 Ky. 578, 206 S. W. 780; L. & N. R. R. Co. v. Lucas, 98 S. W. 308, 30 Ky. Law Rep. 359; Cox v. C., N. O. & T. P. Ry. Co., 238 Ky. 312, 37 S. W. (2d) 859.

There is no evidence of frequent and habitual use by the traveling public, of this crossing, nor is it shown that it was obstructed by permission of the company or had been permitted by it for a reasonable time to be obstructed by its own buildings, or otherwise, or that it is for any cause unusual or dangerous. The allegations of the petition authorized the giving of the instructions requested by the administrator, but in the absence of proof sustaining them, the court was not required to follow the allegations of the petition. L. & N. R. R. Co. v. Long, 172 Ky. 436, 189 S. W. 435. Not only should the instructions be based on the pleadings, but on pleadings supported by the evidence sufficient to authorize a submission of the issues presented by the pleadings. It was the duty of the court to confine his instructions to issues made by the pleadings which were supported by the evidence. Edge v. Ott, 151 Ky. 672, 152 S. W. 764. The instructions given to the jury were appropriate and presented the theory of the administrator which the evidence tended to establish. The instructions given are substantially those approved by this court in L. & N. R. R. Co. v. Engleman, 135 Ky. 521, 122 S. W. 833, 21 Ann. Cas. 565, and also in Simpson v. L., H. & St. L. Ry. Co., 207 Ky. 623, 269 S. W. 749. The instructions offered by the administrator were properly refused. Section 786, Ky. Stats., requiring the signals therein designated, has no application to this private crossing. There was no such general use of it as would impose upon the railroad company any greater duty than indicated in the instructions.

The criticism of the conduct of Hoffman as a juror presents a more perplexing question. At the death of Hoffman's father he owned ten shares of stock in the Louisville & Nashville Railroad Company. He left surviving him a widow and two sons, one of whom was Harold I. Hoffman, the juror in this case. The jury were examined by the court touching their qualifications. One question asked the members was, if any of them was a stockholder in the Louisville & Nashville Railroad Company. Hoffman's response was that "his father owned ten shares." Thereupon the court responded that it was proper for the jurors to give this information. Further than that he remained silent. At that time his father was dead and he was the administrator of his estate, and as such held title to the ten shares of stock of the Louisville & Nashville Railroad

Company and was receiving the dividends thereon. He failed or declined to impart this information at the time of the examination of the jurors for the purpose of determining their qualifications to sit in the case. After motion and grounds for a new trial were filed, and upon an examination in court, Hoffman explained that when the dividends on the stock were received by him, that in pursuance to an arrangement between him and his brother, the checks were delivered to his mother who used them for her own purposes. Also he explained that he and his brother had agreed to give the stock to their mother, their father having left but a small estate, including the stock.

The law owes to every man one fair trial. It can be had only at the hands of a jury whose members are wholly disinterested. A stockholder of a corporation is an incompetent juror in an action to which it is a party, or in which it is directly interested. McLaughlin v. Louisville Electric Light Co., 100 Ky. 173, 37 S. W. 851, 18 Ky. Law Rep. 693, 54 L. R. A. 812; Stone v. Monticello Construction Co., 135 Ky. 659, 117 S. W. 369, 40 L. R. A. (N. S.) 978, 21 Ann. Cas. 640. This rule is based on the known weakness of human nature and its susceptibility to be controlled by selfish interests and not by convictions. The principle exacting and requiring disinterestedness, fairness, and impartiality on the part of the jury is as old as the history of the jury system. The administration of inexorable justice through the medium of the jury system is based upon this principle. It is fundamental, and it is popular knowledge that the inviolability of this principle gives credit, or even toleration, to the verdicts of juries. Caesar demanded that his wife should not only be virtuous, but beyond suspicion, and the law's demand for disinterested jurors whose verdicts affect the property, the honor, and the life of the citizen is no less exacting. It is important to make assured a righteous verdict that it be rendered by disinterested jurors. The interest of a juror in the subject-matter in litigation, however slight, is cause of suspicion of the fairness and integrity of the verdict. Such financial interest is sufficient cause for challenging the juror. The immediate rights of the litigants are not the only object of the rule. A sound public policy which is interested in preserving every verdict of a jury from suspicion demands its

strict observance. It is conclusively presumed that self-interest, like natural relationship, will influence a juror, and deprive at his hands a litigant of a fair trial. The presumption that Hoffman failed to accord a fair trial may not be justified by the truth, but so solicitous is the law to maintain inviolate the rule that every litigant shall be secure in his right to a fair trial at the hands of a disinterested jury, the administrator will be accorded the benefit of this presumption. The same standard of disinterestedness and impartiality that the courts uniformly demand of the presiding judge of a court applies to every juror sitting in the case. The interest of Hoffman in the ten shares of stock was inconsequential, and, in fairness to him, it may be said it was insufficient, in quantity and value, to have influenced his verdict, but the fact that he was a stockholder must control the question of the propriety of his serving as a juror in an action against the corporation, and the quantity and value of his stock cannot be permitted to vary the inflexible rule forbidding a stockholder sitting as a juror in an action to which it is a party. The fact that his mother was the owner of stock in the corporation did not disqualify him. Stone v. Monticello Construction Company, supra. The holding the title as administrator, and his right by inheritance of the one-fourth interest in the ten shares of stock, in law, impugn his verdict, whether justified or not, and entitled the administrator to a new trial.

The court erred in refusing to grant a new trial because of the interest of Hoffman as a stockholder of the corporation defendant.

For this reason, the judgment is reversed for proceedings consistent with this opinion.