**OZARK BORDER ELECTRIC COOPERATIVE, Plaintiff-Respondent,**

v.

**Bill STACY and Glendon Stacy, copartners d/b/a Stacy Brothers, Defendants-Appellants.**

No. 7878.

Springfield Court of Appeals.

Missouri.

Aug. 8, 1961.

Henson & Henson, Poplar Bluff, for defendants-appellants.

Wangelin & Friedewald, Poplar Bluff, for plaintiff-respondent.

STONE, Presiding Judge.

In this action on two written contracts for the sale of electric power, plaintiff, Ozark Border Electric Cooperative, obtained a jury verdict for $1,998 upon which

judgment was entered. On this appeal by defendants, the sole issue is whether the trial court erred in overruling the motion of defendants' counsel, at the close of voir dire examination of the jury panel and before peremptory challenges were made, that the court excuse for cause seven members of the panel who had stated that they were "members" of plaintiff co-operative.

▮ It stands alleged in plaintiff's petition and admitted in defendants' answer that plaintiff is "a corporation duly organized and existing under the laws of the State of Missouri"; and, although the articles of incorporation are not before us, it is abundantly clear from the record that plaintiff is a rural electric co-operative organized under what is now Chapter 394. (All statutory references are to RSMo 1959, V.A.M.S.) In our search for the proper solution to the problem presented, we first consider the nature of plaintiff co-operative and the relationship between plaintiff and its "members." As enumerated in Greene County Rural Electric Co-operative v. Nelson, 234 Iowa 362, 12 N.W.2d 886, 888(2), "'(t)he basic legal and economic principles of the cooperative scheme are limitation upon the voting power and restrictions upon alienation of voting stock or membership interests, thus preserving the dispersion of control and keeping the control within the class affected; limiting the use of proxies, thus fixing the responsibility upon the co-operators; the limitation of earnings upon invested capital, thus insuring the non-profit character of the scheme; and the distribution of earnings or savings upon a patronage basis, that is, according to the quantity or value of products marketed through the association by the respective members.'" In McCrady v. Western Farmers Electric Cooperative, Okl., 323 P.2d 356, 360, the Supreme Court of Oklahoma emphasized that "these rural electric co-operatives are statutory non-profit corporations in which the membership is entitled to a rebate of all charges for service above certain specifically designated expenses and reserves" [consult Sec. 394.170]; and, in discussing the restrictions upon membership in and service by rural electric co-operatives, the Supreme Court of New Hampshire significantly pointed out in Petition of White Mountain Power Co., 96 N.H. 144, 71 A.2d 496, 501, that: "By requiring that the greatest proportion of its consumers shall be members, the legislature ensured control of the (co-operative) corporation by those most interested in the quality and cost of its service. The provision was calculated to make certain that regulation by public authority in the interest of the consumers should be relinquished only in favor of the regulation by the consumers themselves which would be prompted by their own self interests." Consult Secs. 394.120, subd. 1; 394.080, subd. (4); and 394.160.

Under our Rural Electric Co-operative Law [Chapter 394], cast in the conventional co-operative image, a "member" is defined as including "each incorporator of a co-operative and each person admitted to and retaining membership therein." Sec. 394.-020(3). The "members," each of whom "shall be entitled to one vote on each matter submitted to a vote, at a meeting," either annual or special [Sec. 394.120(7)], elect and control the compensation of the directors who manage the business and affairs of the co-operative [Sec. 394.140]; and the "members" are invested with authority, among other things, to approve or reject proposed amendments to the articles of incorporation [Sec. 394.090, subd. 1(1)], to adopt, amend or repeal bylaws [Sec. 394.-110], to change the location of the principal office [Sec. 394.090, subd. 2], and to approve or reject any proposed consolidation or merger with another co-operative or co-operatives [Sec. 394.210] or any proposed dissolution of their own co-operative. Sec. 394.240. "Revenues of a co-operative for any fiscal year in excess of the amount thereof necessary" to pay expenses and provide reserves "shall, unless otherwise determined by a vote of the members, be distributed by the co-operative to its members as patronage refunds prorated in accordance with the patronage of the co-operative

by the respective members paid for during such fiscal year" [Sec. 394.170]; and, in the event of dissolution, the remaining property and assets (after payment of or provision for all debts, obligations and liabilities of the co-operative) shall be distributed "among its members in proportion to the aggregate patronage of each such member during the seven years next preceding" the date of filing of the certificate of dissolution. Sec. 394.240, subd. 3(5).

■ Being neither a partnership nor an ordinary business corporation, instant plaintiff is of a "distinct character" recognized and conferred by our General Assembly in the special act under which it was organized and operates [cf. Kuhns v. Horn, Or., 355 P.2d 249, 253(1)]; but, *insofar as the problem under discussion is concerned,* it appears that plaintiff differs from other corporations not importantly in corporate existence and function but primarily in that the "(r)evenues * * * in excess of the amount thereof necessary" to pay expenses and provide reserves, instead of being subject to distribution in the form of dividends to stockholders as the "profits" of an ordinary business corporation would be, are distributable to plaintiff's members "as patronage refunds prorated in accordance with the patronage of the co-operative by the respective members paid for during such fiscal year." Sec. 394.170. Compare In re Wisconsin Co-operative Milk Pool, 7 Cir., 119 F.2d 999, 1000, certiorari denied 314 U.S. 655, 62 S.Ct. 105, 86 L.Ed. 525. And, although plaintiff's "members" may not be stockholders within the strict, literal meaning of that term as ordinarily defined, i. e., "(o)ne who is a holder or proprietor of stock or stocks" [Webster's New International Dictionary, 2nd Ed., p. 2480; Louisville Board of Ins. Agents v. Jefferson County Board of Education, Ky., 309 S.W. 2d 40, 41], we agree with our brethren of the bench in other jurisdictions who have declared that, under "the curious wording" of these special acts relating to rural electric co-operatives, *the "members" of such co-operatives "at once take the place of the stockholders and customers of privately owned utilities; they are both owners and customers * * *."* (Emphasis ours.) Bookhart v. Central Electric Power Co-operative, 219 S.C. 414, 423, 65 S.E.2d 781, 784; Bush v. Aiken Electric Cooperative, 226 S.C. 442, 85 S.E.2d 716, 717–718; Lamar Electric Membership Corp. v. Carroll, 89 Ga.App. 440, 79 S.E.2d 832, 841. Prosaically adapting Juliet's classical exclamation [Shakespeare, Romeo and Juliet, Act II, Sc. 2, Line 43],

> "What's in a name? That which we call a rose
>
> By any other name would smell as sweet,"

a Georgia court appropriately has said that, "(b)y whatever word the customer may be designated, he is still a customer, and by whatever name a shareholder may be referred to he is still a shareholder," and that one word in the Rural Electric Co-operative Law "designates both the shareholder and the customer; that word is 'member.'" Lamar Electric Membership Corp. v. Carroll, supra, 79 S.E.2d loc. cit. 840.

■ The general rule that a stockholder in a corporation is incompetent to sit as a juror in an action to which the corporation is a party or in which it has a direct pecuniary interest is stated without qualification or exception [50 C.J.S., Juries, § 213, p. 949; 31 Am.Jur., Jury, § 206, p. 175] and has been applied without censure or dissent. Hess' Adm'r. v. Louisville & N. R. Co., 249 Ky. 624, 61 S.W.2d 299, 300–301 (5–7); McLaughlin v. Louisville Elec. Light Co., 100 Ky. 173, 37 S.W. 851, 855(1), 34 L.R.A. 812, 816(1); Murchison Nat. Bank v. Dunn Oil Mills Co., 150 N.C. 683, 64 S.E. 883, 884(1); Crabb v. Oklahoma Gas & Elec. Co., 120 Okl. 182, 250 P. 926, 929(4); Seeherman v. Wilkes-Barre Co., 255 Pa. 11, 99 A. 174, 175(1); Parker v. Waller, 93 Ga.App. 253, 91 S.E.2d 302; Citizens' Light, H. & P. Co. v. Lee, 182 Ala. 561, 62 So. 199, 205; Peninsular Ry.

Co. v. Howard, 20 Mich. 18; Page v. Contoocook Valley Railroad, 21 N.H. 438; annotation 40 L.R.A.,N.S., 978. Those interested in the rationale of the rule will find excellent discussions in the Hess' Adm'r. and Murchison Nat. Bank cases, supra. Although we have discovered no reported case in this jurisdiction directly determining the competency of a stockholder in a corporation to serve as a juror in an action to which the corporation is a party, nothing has been found which would indicate any disposition on the part of Missouri courts to depart from the general rule, and we have noted that, in Murphy v. Cole, 338 Mo. 13, 20, 88 S.W.2d 1023, 1025, 103 A.L.R. 505, 509, our Supreme Court approvingly quoted an excerpt from the Citizens' Light case, supra, holding that, if defendant's insurer would be liable for any judgment in the case, " 'the *stockholders*, officers, agents, and servants of such company would be thereby disqualified as jurors * * * and would be subject to challenge for such cause.' " (Emphasis ours.)

■ Since, as we have seen, "members" of a rural electric co-operative "are both owners and customers" and "at once take the place of the stockholders and customers of privately owned utilities," it would seem to be logical and proper that, in determining their competency to sit as jurors in an *action to which their co-operative is a party*, the same rule should be followed and applied as in cases involving stockholders of other corporations and thus their disqualification for such service should be declared. Indeed, that has been the uniform holding in the only reported cases disclosed by comprehensive research, which have considered and ruled the competency of members of a co-operative association or corporation to sit as jurors in an action to which such association or corporation has been a party. Salt River Valley Water Users' Ass'n. v. Berry, 31 Ariz. 39, 250 P. 356, 357(1); Peanut Growers' Exch. v. Bobbitt, 188 N.C. 335, 124 S.E. 625(1); State v. Thomlinson, S.D., 100 N.W.2d 121(1), 77 A.L.R.2d 1229, 1231(1).

On this appeal, plaintiff's counsel undertake to justify the contrary holding of the trial court on two theories, to-wit, (1) that the interest of the seven veniremen, who were members of plaintiff co-operative, was too remote to disqualify them, and (2) that objection to the seven veniremen because of "their possible financial interest in the outcome of the case" was waived by failure to interrogate them specifically concerning "financial interest." The only case cited in support of the first contention is Kendall v. Prudential Ins. Co. of America, Mo., 327 S.W.2d 174, which, as we read it, does not reach or rule our situation. The question presented there was whether the trial court should have excused for cause four veniremen who held policies issued by defendant. There was "no showing or claim * * * that the challenged veniremen had assessable policies or that any policies of defendant were assessable" and also "no showing as to what kind of policies these veniremen had, whether they were entitled to any dividends or even paid premiums." 327 S. W.2d loc. cit. 177. The basic holding, on which the final conclusion rested, was that: "(A) challenge for cause is not required to be sustained as to every kind of policyholder under all circumstances. In view of modern widespread use of all kinds of insurance, such a rule would be unreasonable at least as to those with nonassessable policies or those who do not participate in policy dividends." 327 S.W.2d loc. cit. 177–178.

As the Kendall opinion noted [327 S.W.2d loc. cit. 177], " * * * bias, of course, may be inferred from interest in the result of the case and that was the basis of the common law disqualification of taxpayers in suits against the municipality in which they resided"—a disqualification which, until enactment of what is now Sec. 494.040, was recognized and enforced in Missouri [Eberle v. St. Louis Public Schools, 11 Mo. 247, 261(4); Fine v. St. Louis Public Schools, 30 Mo. 166, 173(1); Rose v. City of St. Charles, 49 Mo. 509, 510(1); Fulweiler v. City of St. Louis, 61 Mo. 479—see

Priddy v. MacKenzie, 205 Mo. 181, 195, 103 S.W. 968, 972], "because of their (taxpayers') interest, though remote, by being compelled to contribute their mite to the payment of any judgment obtained against the municipality." City of Cape Girardeau v. Hunze, 314 Mo. 438, 456, 284 S.W. 471, 476, 47 A.L.R. 25, 33. But, in the paraphrased language of Edmonds v. Modern Woodmen of America, 125 Mo.App. 214, 217, 102 S.W. 601, 602 (cited without criticism and carefully distinguished in the Kendall case, supra), where two veniremen, members of defendant society whose assessments might have been affected by the result of the suit, were held to have been disqualified for the same reason as were taxpayers at common law in suits against a municipality or county, "(w)e now have a statute qualifying them (taxpayers), but there is no statute changing the rule as to members of an organization like (instant plaintiff)."

Much has been said concerning the preeminent importance of preserving and safeguarding the right to trial by jury and the disinterested, fair and impartial status of those who serve as jurors. One of our English forebears animatedly declaimed in the style of his day that: "In my mind, he was guilty of no error, he was charged with no exaggeration, he was betrayed by his fancy into no metaphor, who once said that all we see about us, kings, lords, and commons, the whole machinery of the state, all the apparatus of the system, and its varied workings, aid in simply bringing twelve good men into a box." Henry Brougham, State of the Law, 1828; Simpson v. Witte Iron Works Co., 249 Mo. 376, 408, 155 S.W. 810, 819. Thomas Jefferson, the author of our Declaration of Independence and the most conspicuous of American apostles of democracy, who had endeavored, albeit unsuccessfully, to secure the introduction of juries into courts of chancery [12 Encyclopaedia Britannica, p. 988], in his first inaugural address listed prominently "trial by juries impartially selected" among those principles forming "the bright constellation which has gone before us, and guided our steps through an age of revolution and reformation."

Our Missouri opinions declare that "(u)nder our system of jurisprudence there is no feature of a trial more important and more necessary to the pure and just administration of the law than that every litigant shall be accorded a fair trial before a jury of his countrymen, who enter upon the trial totally disinterested and wholly unprejudiced." Theobald v. St. Louis Transit Co., 191 Mo. 395, 416–417, 90 S.W. 354, 359; Parlon v. Wells, 322 Mo. 1001, 1011, 17 S.W.2d 528, 532; State v. White, 326 Mo. 1000, 1005, 34 S.W.2d 79, 81. See also Gibney v. St. Louis Transit Co., 204 Mo. 704, 721, 103 S.W. 43, 47; State v. Connor, Mo., 252 S.W. 713, 717. And, the distinguished author of the opinion in the Kendall case, supra, more than two decades ago made this plain pronouncement which our courts have become fond of repeating: "The right of trial by jury guaranteed by our Constitution, if it is to be worth anything, must mean, as this court has said, 'the right to a fair and impartial jury.' * * * Certainly also a party is entitled, unless he waives it, to a jury of twelve impartial qualified men. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men." Lee v. Baltimore Hotel Co., 345 Mo. 458, 463, 136 S.W.2d 695, 698(6, 7), 127 A.L.R. 711, 716; Piehler v. Kansas City Public Service Co., 357 Mo. 866, 873, 211 S.W.2d 459, 463; Moore v. Middlewest Freightways, Mo., 266 S.W.2d 578, 586; Thorn v. Cross, Mo.App., 201 S.W.2d 492, 497; Hieber v. Thompson, Mo.App., 252 S.W.2d 116, 121. No less firmly-established in our jurisprudence is the principle that both parties in a civil case likewise are entitled to a panel of eighteen qualified veniremen from which to select a jury. Murphy v. Cole, supra, 338 Mo. loc. cit. 19, 88 S.W. 2d loc. cit. 1024; Shields v. Kansas City Rys. Co., Mo., 264 S.W. 890, 894(4); Pietzuk v. Kansas City Rys. Co., 289 Mo. 135;

154, 232 S.W. 987, 992. See also Vessels v. Kansas City Light & Power Co., Mo., 219 S.W. 80, 85(1); State v. Naylor, 328 Mo. 335, 343, 40 S.W.2d 1079, 1083.

If these virile statements of principle are not to "become as sounding brass or a tinkling cymbal" [1 Corinthians 13:1] and if our reaffirmation thereof is not to degenerate into impotent lip service, we are of the conviction that, even as at common law a taxpayer was disqualified to serve as a juror in a suit against the municipality of his residence because of his interest, though remote, in contribution of his mite, and even as a stockholder of an ordinary business corporation is disqualified to sit in an action to which the corporation is a party because of his interest, however slight, in the subject-matter in litigation [Hess' Adm'r. v. Louisville & N. R. Co., supra, 61 S.W.2d loc. cit. 301; Murchison Nat. Bank v. Dunn Oil Mills Co., supra, 64 S.E. loc. cit. 885; Page v. Contoocook Valley Railroad, supra], so we should hold, as we do, that a member of a rural electric co-operative incorporated under Chapter 394, whose status is akin to that of a stockholder and whose interest, financial and otherwise, is no more remote or minute and certainly no less active or live than that of many stockholders, is disqualified to sit as a juror in a suit to which the co-operative is a party. See again Salt River Valley Water Users' Ass'n. v. Berry, supra; Peanut Growers' Exch. v. Bobbitt, supra; State v. Thomlinson, supra. We are not impressed by the fact that the seven veniremen, who were members of plaintiff co-operative, thought that they could sit in fair and impartial judgment, as was indicated either affirmatively by their statements or negatively by their silence. For, veniremen are not to determine their own qualifications [Moore v. Middlewest Freightways, supra, 266 S.W. 2d loc. cit. 586(12); Piehler v. Kansas City Public Service Co., supra, 211 S.W.2d loc. cit. 463(5)], and we remain mindful of the eternal verity that, whatever else may change in this changing world, the impelling self-interest, motivating emotions and besetting frailties of members of the human family abide unchanged.

■ In support of their second contention, i. e., that objection to the seven challenged veniremen because of "their possible financial interest in the outcome of the case" was waived by failure to interrogate them specifically concerning "financial interest," plaintiff's counsel cite State v. Murray, 316 Mo. 31, 292 S.W. 434, 437(5), and Lemonds v. Holmes, Mo.App., 236 S.W.2d 56, 62(7), 22 A.L.R.2d 418, neither of which has any application here. Voir dire examination clearly disclosed that seven veniremen were members of plaintiff co-operative and definitely established their identity; and, before peremptory challenges were made, defendants' counsel moved that these seven veniremen be stricken for cause, on the ground that they were members of plaintiff co-operative. Their disqualifying interest in the cause arose by reason of, and was inferable from, the relationship between these veniremen and plaintiff co-operative, and that relationship was and is demonstrated and fixed by the statutes of this state, more particularly by Chapter 394. On the record before us, the challenge for cause was timely and adequate. Carroll v. United Rys. Co. of St. Louis, 157 Mo.App. 247, 262–263, 137 S.W. 303, 307(3).

■ We have not overlooked plaintiff's-respondent's motion to dismiss the appeal because defendants'-appellants' notice of appeal states that it is taken from the order overruling the motion for new trial. Of course, an appeal such as this may be taken only from the final judgment [Sec. 512.020]; and, since our appellate courts have pointed out that fact from time to time over a period of fifteen years, "it seems to us that all members of the bar should now be prepared to take appeals in compliance with the statute, and cease to be content with *attempts* to do so in good faith." Terrell v. Missouri-Kansas-Texas R. Co., Mo., 303 S.W.2d 641, 649; In re C——, Mo.App., 314 S.W.2d 756, 759. But, with the same reluctance manifest in the cited opinions,

we are constrained, by those cases and others of like tenor [e. g., Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657; Stroup v. Radican, Mo.App., 341 S.W.2d 333, 334], to treat instant defendants' imperfect notice of appeal as a bona fide attempt to comply with the governing statute.

It is the judgment of this court that plaintiff's-respondent's motion to dismiss the appeal be overruled, that defendants'-appellants' motion to strike said motion to dismiss the appeal be overruled, that the judgment for plaintiff be set aside and for naught held, and that this cause be remanded to the circuit court for further proceedings not inconsistent herewith.

McDOWELL, J., and HUNTER, Special Judge, concur.

RUARK, J., not participating.