## Chesapeake & Ohio Ry. Co., et al. v. Banks' Admr.

(Decided June 8, 1911.)

### Appeal from Clark Circuit Court.

1. Removal of Action—When a petition against a resident and non-resident defendants states a good joint cause of action, and the petition for removal charges that the resident defendants have been joined for the fraudulent purpose of defeating a transfer of the case, it is for the State Court in which the action is pending to determine as a matter of law from an inspection of the record whether the action of the plaintiff shall or not be removed, unless the action was one that could upon the averments of the petition have been brought in the Federal Court.

2. Same—If a petition for removal is accompanied by affidavits supporting its averments, the plaintiff may file controverting affidavits, and the State Court may then pass upon the question and determine for itself whether the action shall or not be removed.

3. If the State Court upon the filing of a petition for removal alone, or accompanied by affidavits, declines to order a removal, and the case goes to trial, the non-resident defendant may upon the conclusion of the evidence again move the court for a removal, and if the court is of the opinion that there was a fraudulent joinder and that the plaintiff did not in good faith have reason to believe when he filed his petition that he could make out a case against the resident defendants, the action should be removed; otherwise not.

4. Same—If the petition filed by the plaintiff states a cause of action that the Federal Court would have original jurisdiction of, and a petition for removal is filed in due time, the State court should order a transfer of the action.

5. Railroads—Lookout Duty Imposed on Engineer and Fireman—When an engine is approaching a street or crossing, it is the duty of both the engineer and fireman to keep a lookout for travelers, and this duty attaches as fully to the fireman as the engineer.

6. Lookout—Negligence of Fireman—As a passenger train was starting from a station in a city, going in the direction of and a few feet from a much traveled street, the fireman was negligent in looking at the rear end of the train in place of keeping a lookout in front.

7. Negligence of Fireman—Liability of—Where a fireman negligently fails to keep a lookout duty at a place where such duty is imposed, he is guilty of actionable negligence and may be jointly sued with the railroad company.

8. Crossings—Duty of Trainmen to Anticipate Travelers at—Trainmen must anticipate the presence of travelers upon street crossings and protect them if they can from accident and injury.

9. Contributory Negligence—The fact that the injured party is guilty of contributory negligence does not excuse the persons injuring him if after discovering the peril the injury could have been avoided.

10. "Last Clear Chance" rule—Statement of—If the plaintiff by his own negligence puts himself in a position of peril, and the defendant discovers his danger or by reason of some duty ought to discover it, and after that fails to exercise ordinary care to avoid the injury, he is liable, notwithstanding the prior negligence of the plaintiff, because having the last clear chance to prevent the accident his negligence and not that of the plaintiff is regarded as the proximate cause.

SHELBY & SHELBY and PENDLETON, BUSH & BUSH for appellant.

JOUETT & JOUETT and A. FLOYD BYRD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this action by the administrator of Celia Banks to recover damages for her death alleged to have been caused by the negligence of the appellant railway company and its employes, a number of reasons are presented by counsel for the company why the judgment in favor of appellee against it should be reversed. But, before entering upon a discussion of the facts, and the errors alleged to have been committed during the trial, we will dispose of the question raised—that the case should have been removed to the Federal court on the motion and petition of the appellant company, which was made and presented in due time and form.

The appellant company is a Virginia corporation, and the suit was brought against it, Edward Owens the engineer and G. H. Sanders the fireman, both of whom are citizens of Kentucky and were in charge of the engine that struck appellee's intestate

The allegations of the petition necessary to be noticed in considering the point under consideration are as follows:

"Plaintiff says that as his said decedent was thus attempting to cross said track, defendant, the Chesapeake & Ohio Railway Company, through the gross negligence of its agents, servants and employes, and the defendant Edward Owens and G. H. Sanders through their own gross negligence, negligently failed to provide, maintain and keep an adequate and sufficient lookout ahead of said train at the time said decedent went upon said track and was run over; and negligently failed to provide, maintain and keep a lookout at all upon the left side thereof; and negligently failed to give any signal or warning of the starting or approach of said train; and negligently ran said engine and cars upon and over said decedent, and crushed, bruised, cut and mangled her head, body and limbs; * * * that but for the gross negligence of defendants, they could have seen plaintiff's decedent in time to have stopped before striking her, and, after striking her and after she had been pushed by the engine to the east margin of Main street, they could still but for their gross negligence have stopped said train, which was at the time moving very slowly, before it ran over or materially injured her; but that instead of stopping in order to save her life, which they could easily have done, they were grossly negligent in that they continued to run said engine forward until it had passed over her body; * * * he says that all of the acts and omissions herein complained of were due to and caused by the gross negligence of the defendants engaged in equipping, controlling, directing and operating said engine and train of cars."

The petition for removal on the part of the railway company did not deny that Celia Banks was struck and killed by one of its engines in charge of Owens and Sanders; but, after denying specifically the averments of the petition charging it, the engineer and fireman with negligence, averred—

"That each and all of them were false and untrue, and were known to the plaintiff or could have been known by the exercise of ordinary diligence to be false and untrue, but were made for the sole and fraudulent purpose of affording a basis if possible for the fraudulent joinder of the said Owens and Sanders with this petitioner in this

action, and for the purpose of thereby fraudulently depriving this petitioner of its right under the Constitution and laws of the United States to have this action removed into the Circuit Court of the United States for the Eastern District of Kentucky; and that neither of said allegations as to either said Owens or said Sanders can be sustained by the plaintiff on the trial of this action.''

It is now the contention of counsel for the appellant company that—

"For the purpose of determining its right to a removal, the lower court was bound to take the averments of the removal petition as true, and that taking them as true the right to remove was clearly made out. That where admitting averments of the removal petition to be true, where they made a proper case for removal, the application for removal in itself works ipso facto the transfer to the Federal court and deprives the State court of its jurisdiction; and if the plaintiff desires to make an issue upon the truth of the averments upon which the right of removal is based, he must do this—not in the State court but in the Federal court, which latter court alone has jurisdiction to try such issue.''

It will at once be perceived that if this contention is maintainable the action against the railroad company should have been removed, although the petition stated a joint cause of action against all of the defendants sufficient to sustain a joint or several judgment against them. It will further be seen that its admission as a rule of practice would operate to work a removal to the Federal court so far as the non-resident defendant was concerned of every action involving two thousand dollars or more brought in a State court against a non-resident and resident defendants, and give to the Federal courts the exclusive right to hear and determine whether or not the action should be removed. The argument of counsel is that although the petition of the plaintiff may in good faith state a good joint cause of action against all of the defendants, and although the plaintiff may be able to support the petition by evidence that would amply sustain a judgment against all of them, nevertheless if the petition for removal charges as in this case that the joinder of the resident defendants was fraudulent the State court is at once and upon the filing of the removal petition divested of jurisdiction to hear and determine the question

of removal, and the action must be at once transferred to the Federal court, in which court the plaintiff if he desires to have the action remanded to the State court may go and make his motion, which the Federal court may grant or refuse as in its judgment may seem right and proper. Counsel, in short, would have us say that such an action as we have described brought in a State court that had jurisdiction of the subject matter of the action and the parties must be removed upon the mere filing of the petition, although the action could not have been brought in the Federal courts in the first instance, as the Federal courts have not jurisdiction where there is a joint controversy and one of the defendants is a resident of the State in which the action is brought. We fully appreciate the fact that in cases in which the Federal courts have jurisdiction their authority is paramount to that of the State courts and that the State courts must yield in all cases in which there is conflict of jurisdiction. Where the point in issue involves a Federal question and it has been ruled by the Supreme Court, the State courts should and do follow its ruling. But, on the other hand, if the action has been brought in a State court that has jurisdiction of the subject matter as well as of the parties to the action, its right to hear and determine the cause should not be surrendered in the absence of a plain ruling adverse to its jurisdiction by a court of superior authority. Questions like this have come before the Supreme Court in many cases, but we do not think the decisions of that Court sustain counsel in his contention that the filing of a sufficient removal petition and bond in an action rightfully brought in a State court and that could not be brought originally in the Federal court, operates to transfer the case merely because the removal petition charges a fraudulent joinder.

In Alabama Great Southern R. Co. v. Thompson, 200 U. S., 206, 50 L. ed., 441, an action was brought in a State court in Tennessee by the administrator of Florence James, who was a citizen of that State, for the negligent killing of his intestate by the defendant railroad company, against the railroad, an Alabama corporation, and Mills and Fuller, both citizens of Tennessee. The petition averred in substance that the plaintiff's intestate had been negligently and wrongfully run over while upon the track of the railroad company by an engine and train of cars owned and operated by it which was at the time

under the management and control of Mills, its conductor, and Fuller, its engineer. The court, quoting with approval from the case of Powers v. Chesapeake & Ohio R. Co., 169 U. S., 92, 42 L. ed., 673, said—

"It is well settled that an action of tort, which might have been brought against many persons or against any one or more of them, and which is brought in a State court against all jointly, contains no separable controversy which will authorize its removal by some of the defendants into the circuit court of the United States, even if they file separate answers and set up different defenses from the other defendants, and allege that they are not jointly liable with them, and that their own controversy with the plaintiff is a separate one; for, as this court has often said, 'a defendant has no right to say that an action shall be several which the plaintiff seeks to make joint. A separate defense may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings.' " To the same effect is L. & N. R. Co., v. Wangelin, 132 U. S. 598, 33 L. Ed., 474.

In Wecker v. National Enameling Co., 204 U. S., 176, 51 L. Ed., 430, it is said—

"While the plaintiff, in good faith, may proceed in the State courts upon a cause of action which he alleges to be joint, it is equally true that the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the State courts, in proper cases, to retain their own jurisdiction."

In Stone v. State of South Carolina, 117 U. S., 430, 29 L. Ed., 962, the Court said—

"A state court is not bound to surrender its jurisdiction of a suit on a petition for removal, until a case has been made which on its face shows that the petitioner has a right to the transfer. * * * The mere filing of a petition for the removal of a suit, which is not removable, does not work a transfer. To accomplish this the suit must be one that may be removed, and the petition must show a right in the petitioner to demand the removal. This being made to appear on the record, and

the necessary security having been given, the power of the State court in the case ends and that of the circuit court begins." To the same effect is Crehore v. Ohio & Mississippi R. Co., 131 U. S., 240, 33 L. Ed., 144.

These cases illustrate the rulings of the Supreme Court upon the question, and in no one of them or indeed in any other we have examined has it been held that the mere filing of a removal petition works a transfer in cases where the State court had and the Federal court did not have original jurisdiction.

A different rule obtains when the action brought in the State court and sought to be removed is one that might have originally been brought in the Federal court, and this distinction should always be kept in mind in determining the right and power of the State court to pass upon the question of removal. To re-state the proposition—if the State court in which the action is pending had, and the Federal court did not have, original jurisdiction of the subject matter of the action, it is for the State court to determine the question of removal. On the other hand, if the action sought to be removed might have originally been brought in the Federal court, then the filing of the removal petition with a sufficient bond operates to transfer the case from the State court to the Federal court. This distinction is well recognized in Burlington R. Co. v. Dunn, 122 U. S., 513, 30 L. Ed., 1159; and Texas & Pacific R. Co. v. Eastin, 214 U. S., 153, 53 L. Ed., 946.

But, it is claimed by counsel that the decisions of this court upon the question under consideration are conflicting, as the Court in Illinois Central R. Co. v. Jones, 118 Ky., 163, held that after the filing of a removal petition accompanied by a sufficient bond the State court could proceed no further; while in the cases of Illinois Central R. Co. v. Coley, 121 Ky., 385, Dudley v. Illinois Central R. Co., 127 Ky., 221; and Underwood v. Illinois Central R. Co., 103 S. W., 322, and others, it was held that the State court had the right to inquire whether the facts alleged in the petition for removal were true, and to determine for itself whether the action was removable. In the Jones case is found the following, which counsel argues is in conflict with subsequent cases—

"If the petition for removal be filed in the State court in due season, and be accompanied by sufficient bond and motion, and if the petition states facts showing, or if it

and the record together then show, a prima facie right to the removal by the petitioner, it is the duty of the State court to proceed no further than to satisfy itself as to the sufficiency of the bond.''

But, in this expression the court had reference to cases of which the Federal court had original jurisdiction, and not to cases in which exclusive original jurisdiction was in the State court. This is made plain by the following excerpt from the opinion—

"But whether, upon the facts stated in the petition and record, there was presented a federal case, was within the jurisdiction of the State court to adjudge. (citing authorities)    While the State courts can not inquire whether the facts alleged in the petition for removal are true, yet, when the petition for removal and the record do not show a prima facie right to the removal, the State court may refuse to surrender the case, and will proceed to its trial.''

In the Coley case, the suit was brought against the railroad company, a foreign corporation, and the engineer of the train, a citizen of Kentucky. The petition for removal charged that the engineer was joined for the fraudulent purpose of preventing the removal, and the insistance was made, as in this case, that upon the filing of the petition the case should have been transferred. But, in answer to that contention this Court said—

"The effect of this would be to give the Federal courts jurisdiction of the merits of the case in actions of this sort, although such jurisdiction is expressly withheld by the act of Congress. * * * The State court has jurisdiction to try the merits of the case if there is a joint controversy, and it will not do to say that the action must be transferred to the Federal court for that court to determine whether the State court may try the case on the merits.''

In the Dudley case, a resident citizen was joined as a defendant with a foreign corporation. The petition for removal was denied, and upon the trial of the case when the plaintiff had concluded his evidence the court directed the jury to return a verdict in favor of the resident defendant. Thereupon the foreign railroad company renewed its motion for removal, which was sustained. In considering the case the Court said—

"It is true that it is for the State court to determine from the record when the motion for a transfer is made whether or not there is then presented a state of case authorizing a transfer. * * * And it has been ruled in a number of cases that the motive or purpose of the plaintiff in joining the defendants will not be inquired into, provided a cause of action is stated against them jointly. * * * But when during the progress of the trial, for instance, at the close of the plaintiff's evidence, it becomes apparent that no cause of action has been made out against the resident defendant, and there is nothing in the record to warrant the belief or conclusion that a stronger case could have been made out when the petition was filed, the court will not sit idly by and permit a plaintiff by making allegations that he must have known he could not establish to deprive the defendant of a right guaranteed to it or him by the law."

There is no conflict in the decisions of this Court, nor are its opinions in conflict with the decisions of the Supreme Court. Illinois Central R. Co. v. Houchins, 121 Ky., 530; Ward v. Pullman Car Corporation, 131 Ky., 142.

But, in an effort to put at rest any doubt as to the position of this Court upon questions like the one presented in this case, we hold: (1) That when a petition against a non-resident and resident defendants states a good joint cause of action against all of them, and a petition for removal is filed, charging that the resident defendants have been joined for the fraudulent purpose of defeating a transfer of the case, it is for the State Court in which the action is pending to determine as a matter of law from an inspection of the petition of the plaintiff and the petition for removal whether the action shall or not be removed, unless the action was one that could upon the averments of the petition have been brought in the Federal Court. (2) If the petition for removal is accompanied by affidavits supporting its averments, the plaintiff may also file controverting affidavits, and the State court may then pass upon the question and determine for itself whether the action shall or not be removed. (3) If the State court upon the filing of the petition for removal alone, or accompanied with affidavits, declines to order a removal, and the case goes to trial, the non-resident defendant may upon the conclusion of the evidence for the plaintiff or

after all the evidence is in again move the court for a removal; and if, upon hearing the plaintiff's evidence, or all the evidence, the State court is of the opinion that there was a fraudulent joinder, and that the plaintiff did not in good faith have any reason to believe when he filed his petition that he could make out a case against the resident defendants, the action should be removed; otherwise not. (4) If the petition filed by the plaintiff in the State Court states a cause of action that might have been brought in the Federal court, or rather a cause of action that the Federal court would have original jurisdiction of, and a petition for removal is filed in due time, accompanied by a sufficient bond, and the removal petition or the record as made up shows a right of removal, the State court should without delay so order. From what we have said, it follows that the court did not err in refusing to remove the case when the petition for removal was filed, as upon the averments of the petition a cause of action was stated that could not have been brought in the Federal court, as the Federal court has not jurisdiction of an action like this between resident parties or an action in which one of the defendants jointly sued is a resident. Nor did the court err in refusing a transfer on the motion made for that purpose after the evidence was in, as the record as then made up did not show that the plaintiff when the suit was filed did not in good faith have reason to believe that an action could be maintained against both the engineer and fireman. On the contrary, we are of the opinion that the evidence made out a case of actionable negligence against the fireman, and that the court should not have directed a verdict in his favor.

In April, 1907, Celia Banks, a woman about forty-five years of age, accompanied by her son, her father-in-law and other members of her family, arrived at Winchester, a city of several thousand population, on the morning express train from Ashland, Kentucky. The appellant railroad company's main line at Winchester runs east and west, and its passenger station is about a square east of Main Street, which is the principal thoroughfare of the city and crossed the railroad at right angles. This street is reached from the station by a concrete walk adjoining the track. Passengers arriving on trains use this concrete walk to Main Street; and, if they desire to go into the northern part of the city, they cross defendant's track at Main Street. The train from which Mrs.

Banks alighted, stopped a few minutes at Winchester for the purpose of receiving and discharging passengers, and then started on its journey west and towards Main street. Mrs. Banks and her party, after leaving the train, walked down the concrete walk to Main street, and, desiring to go into the northern part of the city, they started across the track. About the time Mrs. Banks reached Main Street, the train started, and when it had traveled a few feet and acquired a speed estimated at from two to five miles an hour, Mrs. Banks stepped from the concrete walk on to the track in an effort to cross it. She wore a sun-bonnet, and her back was at least partly to the engine, and when she had taken a few steps from the concrete walk towards the track she was struck by the engine, and rolled by it on the side of the track until she reached the middle of Main Street, some forty feet distant from where she was struck. At this point she was run over by the wheels of the engine, which cut off one leg and inflicted other serious injuries, from which she died.

The decisive questions of fact in the case are—(1) Did the persons in charge of the engine keep such a lookout as their duty to the public required them to keep, (2) If they had kept such a lookout could the injury to Mrs. Banks have been avoided, (3) Was she guilty of such contributory negligence as would defeat a recovery. Other important questions are—How close was Mrs. Banks to the engine when she stepped off the concrete walk on to the track; the speed of the train when she stepped on the track, and, within what space it could have been stopped.

A number of persons saw the accident, but as they viewed it from different standpoints there is much conflict in their evidence in respect to the controlling questions of fact that we have mentioned. Without relating in detail the evidence, we deem it sufficient to say that the testimony for appellee conduced to show that the engine at the time Mrs. Banks stepped off the concrete walk towards and on to the track was about twenty feet from her, and running at a speed of three or four miles an hour, and that it could have been stopped in a distance of not exceeding twelve feet if a signal to stop had been given to the engineer. On the other hand, the evidence for the appellant is to the effect that when she stepped on the track the engine was only ten or twelve feet from her and running some six or eight miles an hour; and that after she stepped on the track the engine could not have

been stopped before striking her. She stepped on the track on the fireman's side of the engine, and it is conceded that the engineer could not have seen her if he had been keeping a lookout, as the boiler projected so far ahead of the cab that the view of a person on the fireman's side within forty or fifty feet of the engine was obstructed by the boiler and front of the engine. The fireman testified that when or about the time the train started he put in a few shovels of coal and then stepped out in the gang-way between the cab and the tender and was looking back at the rear end of the train when he heard a call of distress, and saw Mrs. Banks nearly under or under the engine on his side; and that as soon as he discovered her he at once signaled to the engineer to stop the train and he did so as soon as possible.

We have then this condition of affairs—this train when it started from the depot was within a few feet of a much traveled street in a populous district of the city but the engineer, however sharp a lookout he was keeping, could not see persons at the street crossing approaching or on the track on the fireman's side, after the engine started, and the fireman was engaged in looking at the rear end of the train. The result of this was that no lookout for travelers at this crossing was kept at the time Mrs. Banks was struck. The engineer could not see the crossing in front of his engine, and the fireman was looking in another direction. As under the circumstances of this case it was the duty of the company through its engineer and fireman to keep a lookout at this time and place, there was evidence sufficient to authorize a submission of the case to the jury and sustain a verdict, upon the ground that if a lookout had been kept by the fireman, the accident to Mrs. Banks could have been averted. So that the vital question in the case is—Was the fireman negligent in failing to keep a lookout. We have never gone to the extent of holding that railroad companies should have a third person in the engine to keep a lookout at times and places where this duty is demanded, and when the other duties and situation of the engineer and fireman were such that they could not do so. Nor have we ruled that either the engineer or fireman must postpone when they are approaching a crossing at which the presence of travelers must be anticipated, the performance of essential duties in connection with the running of the train that interfere with their keeping a lookout. Nor is it necessary to sustain the judgment that we should so

hold in this case, as we think the fireman was guilty of negligence in failing to keep a lookout in front of the engine at the time he was looking at the rear of the train, and that if he had been keeping such a lookout he could have discovered the presence of Mrs. Banks on the track in time to have signalled the engineer to stop the train, and that it could have been stopped before striking her. If it was not the duty of both the fireman and engineer under the circumstances described to keep a lookout, it is difficult to imagine a state of case in which the lookout duty would be required as men, women and children at this point were constantly crossing the track in going from one part of the city to another, and from one street to another. It is attempted however to excuse the conduct of the fireman in looking at the rear of the train in place of in front of the engine upon the ground as stated by counsel:

"That it is more important for the safety of the traveling public that the fireman in such case should look back to see if the train is clearing the station without injuring passengers and to be ready to receive signals in case of danger where persons are boarding the train or alighting from it, than it is for him to look ahead."

But this argument does not meet or answer the duty of the railroad company at the time and place this accident happened. There may be times and places in which a fireman would be excused in looking towards the rear of the train, rather than in front of it, but this was neither such time nor place. The train was equipped with a full crew, who could and doubtless did exercise care to see that passengers were not injured by the negligence of the company in boarding or alighting from the train, and to them the fireman should have left this duty. Nor is the negligence of the fireman to be excused upon the theory that he could not have anticipated that Mrs. Banks would step from a place of safety on the track in front of the moving engine. It is negligence of this character on the part of travelers that persons in charge of an engine approaching crossings where travelers have a right to be and go that makes it the duty of trainmen to anticipate and protect them if they can from accident and injury. Except for the fact that travelers are negligent, it would not be necessary for trainmen to keep a lookout at any street or crossing. Nearly every crossing accident that happens is due in more or less degree to the negligence of the traveler, and it is the recognition of

this carelessness or thoughtlessness on the part of the traveling public that has induced the law to impose upon persons in charge of an engine the duty of keeping a lookout at crossings.

Nor does the fact that the bell may have been ringing or that the crossing gates on Main Street were down, excuse or diminish the lookout duty. It is more import-ant for the safety of travelers at places like this that this duty should be observed than that the bell should be rung or the crossing gates closed, as the ringing of the bells and the closing of the crossing gates offer little protection to persons who thoughtlessly or carelessly go upon railroad tracks in front of approaching trains. The fact that such persons, heedless of the danger, go upon the tracks when bells are ringing and crossing gates are down is one of the reasons why the lookout duty is re-quired and should be maintained. In short the chief pur-pose of the lookout duty is to protect the traveling public from the consequences of their own negligence. From the facts, we think it may safely be said that the fireman was negligent and that his negligence was the proximate cause of the injury, and that it was sufficient to authorize the verdict and judgment against the railroad company. But the question remains, was this negligence of such a character as to warrant a judgment against him. It is true his negligence consisted in his failure to perform a duty but it was more affirmative than negative negligence. He could and should have performed the duty of keeping a lookout. The duty of keeping a lookout was imposed upon him and did not depend upon what some one else should have done but failed to do, or upon what some one else did not do but should have done, as was the case in Cincinnati R. Co. v. Robertson, 115 Ky., 858, and Dud-ley v. Illinois Central R. Co., 127 Ky., 221. The facts resemble more the case of Ward v. Pullman Car Co., 131 Ky., 142, where the court in speaking of the negligence of the employes of a railroad company who were charged with the duty of inspecting cars and who had been joined as defendants in the action said—

"It is not a case of mere failure to act, but it is a case of one who was charged with the duty of seeing that the car was safe before delivering it to another to be used with actual knowledge that if it was unsafe it would en-danger his life; for they must be charged with knowing what they should have known by the exercise of ordinary

care when they made the inspection and passed the car. If they had not inspected the car at all, and had not approved the car in any way, they would have done no positive act, and a different question would be presented. We therefore conclude that, if they were the only defendants to the action, a recovery might be had against them under the allegations of the petition.''

And so in this case. The failure of the fireman to keep a lookout was more than mere nonfeasance. It was a breach upon his part of a positive duty enjoined upon him, and his failure to perform this duty was actionable negligence. If the engineer of a train fails to keep a lookout, and thereby injury results to a traveler, there can be no doubt that the engineer would be personally liable, and it is as much the duty of the fireman as it is the engineer to keep a lookout, and if he negligently fails to do so as in this case, his liability is the same as that of the engineer. Illinois Central R. Co. v. Coley, 121 Ky., 385.

The instructions are complained of, but we think they submitted fairly the only issue of fact involved in the case, which was, whether or not the persons in charge of the engine if they had been exercising ordinary care could have discovered the peril of Mrs. Banks in time to have prevented injuring her. It was correctly assumed by the trial court that Mrs. Banks was guilty of contributory negligence, but her negligence did not excuse the defendants if after discovering her peril they could have avoided injuring her, and this the jury found they could have done if they had been exercising ordinary care to discover her presence on the track.

Counsel insist that the instruction misapplied what is known as the ''last clear chance rule,'' but in reaching this conclusion counsel assumes the state of facts that are in dispute. If the facts assumed were admitted, then the criticism of the instruction would be correct. The ''last clear chance rule,'' is thus stated by counsel—

''If the plaintiff by his own negligence has put himself in a position of peril, and the defendant discovers his danger, or, by reason of some duty owing by him to the plaintiff, ought to discover it, and after that fails to exercise ordinary care to avoid the injury, then the defendant is liable notwithstanding this prior negligence of the plaintiff, because, having the last clear chance, or opportunity, to prevent the accident his negligence, and not that of the plaintiff, is regarded as the proximate cause.''

If we should accept this definition of the rule as correct, and hold that it was in force in this State—although it was expressly repudiated in L. & N. R. Co. v. Trisler, 140 Ky., 447,—we think there was evidence sufficient to justify the jury in finding and the court in rendering judgment that Mrs. Banks had negligently put herself in a position of peril but that the fireman if he had been keeping a lookout could have discovered her peril and after discovering it the fireman and engineer could by the exercise of ordinary care have avoided the injury.

Another objection is that the verdict, which was for five thousand dollars, was excessive; but we are not disposed to disturb the judgment on this ground. There is evidence that Mrs. Banks was at the time afflicted with tuberculosis, and the contention is that her death which occurred several months after the injuries were received was the result of this disease and not the injuries. On the other hand, there was evidence that she did not have tuberculosis and that her death was the direct result of the injuries. The issue of fact thus raised was for the jury and it was left to them under proper instructions to decide.

Another complaint is that the court erred in permitting J. F. Banks, the husband of Mrs. Banks, to testify as to her conditon when he saw her at the Lexington hospital and afterwards; but there is no merit in this contention. Aetna Life Ins. Co. v. Bethel, 140 Ky., 609.

Perceiving no error prejudicial to the substantial rights of the appellant the judgment is affirmed.