## Black Mountain Corporation v. Thomas, By, etc.

(Decided February 22, 1927.)

### Appeal from Harlan Circuit Court.

1. Master and Servant—Employer Held Not Responsible for Physician's Delay in Operating on Employee for Appendicitis Because of Incorrect Diagnosis.—Corporation, furnishing employee a competent physician, as agreed, is not responsible for latter's failure to operate in time because of negligence in not discovering sooner that employee had appendicitis, instead of typhoid fever as diagnosed.

2. Evidence—Agent's Statements After Close of Transaction, as to What Then Occurred, are Inadmissible.—While agent's statements during and as part of transaction are competent against principal, his statements after transaction was closed, as to what then occured, are inadmissible.

3. Appeal and Error—Admission of Testimony, in Employee's Action for Physician's Negligence in Not Operating Sooner for Appendicitis, that Another of Defendant Employer's Physicians Said Afterward that he Knew from First that Plaintiff had Appendicitis, Held Prejudicial Error.—In employee's action against employer for additional time lost and pain suffered in hospital because of negligence of physician employed by defendant in not operating on plaintiff sooner for appendicitis, admission of testimony that another physician employed by defendant told witnesses, about the time suit was brought, that he knew all the time that plaintiff had appendicitis, held prejudicial error.

4. Customs and Usages—Evidence that Physician First Consulted by Employee did Not Return Because of Custom After Another Doctor was Called in Held Properly Excluded, in View of Contract with Employer for Services.—In employee's action against employer for damages by failure of physician, employed by defendant pursuant to contract with employees, to correctly diagnose plaintiff's ailment and operate sooner for appendicitis, evidence that another physician, employed by defendant and first consulted by plaintiff, did not return because of doctors' custom not to return to patient, after another doctor was called in, was properly excluded.

5. Costs—Infant, Unable, Because of Poverty, to Get Solvent Next Friend, May Sue as Poor Person (Ky. Stats., Section 884).—Under Ky. Stats., section 884, infant, unable, because of poverty, to get solvent person to act as next friend liable for costs, may sue as poor person.

6. Master and Servant—Employer's Breach of Contract to Furnish Employee a Competent Physician Held for Jury.—Breach of contract by employer to furnish employee a competent physician held for jury, in employee's action against employer for damages caused by physician's incorrect diagnosis and failure to operate sooner for appendicitis.

7. Master and Servant—Measure of Recovery for Employer's Breach of Contract to Furnish Employee Competent Physician is Reasonable Cost of Procuring Care Contracted for.—Measure of recovery for employer's breach of contract to furnish employee a competent physician, who failed to operate on employee soon enough because of incorrect diagnosis, is reasonable cost of procuring care and attention provided for by contract.

LEE & SNYDER for appellant.

LYTTLE & MORGAN and E. H. JOHNSON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

W. A. Thomas was in the service of the Black Mountain Corporation, which entered into an agreement with

its employees by the terms of which it was provided that the corporation would retain out of the wages of each single man $1.25 a month and furnish to its employees a competent physician to attend to the medical needs of its employees, and would also retain an additional twenty-five cents a month and furnish them hospital services. Thomas was nineteen years old and a single man. The company retained out of his wages $1.50 a month. He brought this suit against the company, charging that the defendant had failed and refused to furnish him medical attention and proper hospital service and that in order to be properly attended to it was necessary for him to call a doctor and to be put in another hospital, and this he did at a cost of something over $300.00; that by reason of the negligent failure of the defendant to have him treated or have its doctor properly attend to him he was sick for a period of four months, when if he had been properly attended to he would not have been disabled from work for more than one month, to his damage in the sum of $525.00; also that by reason of the defendant's negligence in failing to have him properly treated by a competent physician he was caused to suffer great pain and anguish for a period of three months and his earning power for three months was totally destroyed, to his damage in the sum of $1,000.00.

The allegations of the petition were controverted by answer; the case came on for trial; the jury returned a verdict for the plaintiff in the sum of $750.00. The defendant appeals, insisting that the court erred in the admission and rejection of testimony and in instructing the jury. The facts are these: The company had employed two competent physicians, Dr. Ginina and his assistant Dr. Aikens; both were skillful physicians and there was no dispute as to their competency. It had also established a hospital and its employees were entitled to admittance at the hospital on application. Thomas was a driver. On Wednesday, May 30, 1923, Thomas met Dr. Ginina in the road and told him he had cramping and pain in the side. The doctor gave him some tablets and told him he had cramp colic. Dr. Ginina left that evening. Thomas was still suffering the next day and sent for Dr. Aikens, who said he had cramp colic and gave him some tablets as the other doctor did. The doctor said he would be back on Friday. Thomas says he did not come back Friday, but came twice on Saturday. The doctor says

he came on Friday and Saturday. Thomas says when he came Saturday morning his mother asked him what was the matter and he said he couldn't tell exactly what was the matter. Thomas also says that when he came back Saturday evening his father asked him what was the matter and he told him that he had a serious case of typhoid fever, and also said to his father not to think hard of him for not being there Friday as Dr. Ginina had left and he had more to attend to than he could do. The doctor says he didn't make this statement. They both agree that the doctor came back Sunday morning. Thomas says he then said that if he didn't get any better in three or four days the doctor would give him a blood test. The doctor says that he then told him that he thought he had typhoid fever but he couldn't tell positively until a little more time had elapsed. After Dr. Aikens left that morning Thomas' father went for Dr. Lewis, who lived about two miles away and was not in the service of the company. Dr. Lewis came and after examining him said he could not tell exactly what was the matter unless he gave him a blood test, and told Thomas' father to go and get Dr. Aikens to take one. Thomas' father then went to see Dr. Aikens. They differ as to what occurred. He says thatthe doctor refused to come. The doctor says he told him that he had no business calling in Dr. Lewis without consulting him and that Dr. Lewis could take the blood test if he wanted to; also that if they needed him further to let him know. Thereupon the father went for Dr. Lewis, who came and took the blood test. After taking it he was still undecided as to whether the trouble was typhoid fever or appendicitis and told them that he would have to make another test in the morning. The next morning Dr. Lewis came back but found that conditions had so changed that he then advised an immediate operation. The patient was taken to Dr. Lewis' hospital and was operated on and was there about four months before he got well. According to Thomas' testimony, from the beginning he had a knot on his side, violent cramping pains and his leg was drawn up. According to the doctor's testimony he was suffering from diarrhea. The stomach was distended with gas and he had about two degrees of fever. The testimony of all the doctors agrees that in the early stages it is very difficult to distinguish typhoid fever from appendicitis. Dr. Lewis and Dr. Aikens both

came to the same conclusion from the examination which they made on Sunday.

The defendant insists that on the facts the court should have instructed the jury peremptorily to find for the defendant, on the ground that no application was made to take the patient to the hospital; that the doctor did attend him, and that if he made any mistake in diagnosis the defendant is not liable for it, even though the doctor might be liable for malpractice. The gist of the plaintiff's action as to his loss of time and suffering is that he was not operated on in time and that if he had been sooner operated on he would not have lost four months' time or suffered the pain and agony which he endured. But failure to operate on him sooner was due to the fact that Dr. Aikens thought he had typhoid fever, and if this was true he should not have been operated on.

In Illinois Central Railway Co. v. Buchanan, 126 Ky. 292, the court thus states the rule applicable in such cases:

> "When the railroad company employs competent and skillful people, the measure of its duty to its employee is discharged. If these persons should be guilty of malpractice or other acts of negligence, the party injured by reason thereof must look to the individual causing the injury, and not to the railroad company."

To the same effect see L. & N. R. R. Co. v. Foard, 104 Ky. 462; Ballard v. C. & O. R. R. Co., 144 Ky. 478, 18 R. C. L. 603; 39 C. J. 245-246.

Under this rule the company is not responsible if Dr. Aiken was negligent in not discovering sooner what was the matter with Thomas, though the latter may be liable if he failed to treat him with proper care and skill.

The circuit court erred in admitting the evidence of several witnesses stating that Dr. Ginina, after his return and about the time the suit was brought, told them that he knew all the time that Thomas had appendicitis. While the statements of an agent made during the transaction and as a part of it are competent against his principal, his statements after the transaction is closed, as to what then occurred, are never so admitted. Sparks v. Maeschal, 217 Ky. 235, and cases cited. This evidence was very prejudicial to the appellant, for the reason that the gist of plaintiff's action as to time lost and pain suffered was that by reason of Dr. Aikens' negligence in

failing to treat him for appendicitis the plaintiff was required to stay in the hospital four months and endure great suffering during this time, when if he had been treated in time he would have been out in a month and would not have so suffered.

The court properly refused to admit the evidence as to the custom of doctors not to return to a patient after another doctor was called in. This custom may be all right where there is no contract, but where there is a contract for services such a custom cannot be considered. The evidence as to why Dr. Ginina was away should have been excluded.

The court properly allowed the plaintiff to sue as a poor person, it appearing that he could get no solvent person to act as his next friend. Section 884, Ky. Stats., includes infants no less than adults.

> "If the infant plaintiff, by reason of her poverty and want of legal capacity to indemnify those against loss who might be willing to offer their services as the next friend, is unable to furnish the name of a solvent party liable for costs, the greater the necessity for permitting those in such a helpless condition to avail themselves of the provisions of the statute." Westerfield, &c. v. Wilson, 12 Bush 126.

On the return of the case to the circuit court the plaintiff's amended petition, setting out correctly the amount of the expenditures made by him, will be allowed to be filed. The case should go to the jury on the question whether there was a breach of the contract. There is a conflict of evidence as to whether Dr. Aikens refused to treat the plaintiff any longer and on this question the case should go to the jury.

If there was a breach of the contract the measure of recovery is the reasonable cost of procuring the care and attention provided by the contract. Illinois Central R. Co. v. Gheen, 112 Ky. 695.

> "The measure of damages for breach of a contract to furnish medical services is the amount which it might reasonably have cost plaintiff to obtain the same benefits," 39 C. J., p. 243.

Judgment reversed and cause remanded for a new trial.