# Colston's Administrator v. Cincinnati, N. O. & T. P. Railway Company et al.

(Decided March 23, 1934.)

L. M. ACKMAN for appellant.

F. A. HARRISON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This appeal requires a review of a trial, and a verdict for the defendant, in an action of Louis Colston's administrator against the Cincinnati, New Orleans & Texas Pacific Railway Company for the death, and destruction of the power to earn money, of Louis Colston resulting from being struck by a freight train at the crossing of a public highway and the railroad tracks.

Joe Ed. Ruhall on the 11th day of August, 1932, lost a $2 bill, as he believed, while traveling over the crossing of the highway and the railroad tracks, while on his way to a point near the depot. He engaged in hunting the $2 bill. Louis Colston was walking "a slow gait" about two feet from him. Ruhall was looking for his money and talking with Colston, both with their

faces turned toward the ground. A crossing signal was located about 700 feet from the crossing. At the point along the highway at which Ruhall and Colston were traveling, they could see a train a distance of 500 feet from the crossing in the direction from which the train came which struck and killed Colston. The engineer in the cab could see an equal distance in front of him in the direction in which the train was traveling. There was no obstruction interrupting the vision of Ruhall and Colston, and of those in charge of the train, preventing them from seeing each other. Ruhall, and all other witnesses in behalf of the estate of Colston, declared no bell was rung or whistle sounded by those in charge of the train until about the time the side of the engine and Colston collided, resulting in the death of Colsotn. It was testified by Ruhall that when he first saw the engine he jumped back, grabbed at Colston, missed him, the train hit the latter on the left arm, knocked him to the ground; he bounced back and fell. The stirrup on the side of the engine, used for the purpose of climbing up on the engine, struck Colston. The train was a freight, consisting of about 60 cars. The signal was given after Ruhall first saw it about the time it hit Colston. It stopped from the point where it hit Colston within about 35 car lengths. Polly Whitton, at the time, was sitting on the porch at her home, 200 feet from the railroad crossing. She observed Colston and Ruhall leaving the Dixie Highway, coming toward the railroad crossing. She saw the train strike Colston. He and Ruhall "were just walking along with their heads down." She observed Ruhall reach out toward Colston then drop back when the train struck Colston. Other witnesses, from a distance, saw Colston and Ruhall, but Ruhall and Mrs. Whitton particularly describe, in detail, the tragedy. No other witness for the administrator attempts to say it occurred other than as described by Ruhall and Mrs. Whitton.

The engineer details his knowledge of the accident, substantially thus: When the train reached a point about 100 feet north of the whistling post he saw two men walking south on the right side of the south-bound main track. At that time they were on the south side of the track, probably 40 or 50 feet from the crossing. On reaching the whistling post he sounded two long and short blasts of the whistle for the crossing. The engine bell was ringing and continued to ring until after the

accident. It operated automatically. By the time the train reached a point within 20 or 30 feet of the crossing the two men "stepped from the right side of the track into the middle of it," when Colston was struck by the train. At the time he was struck "they were right up in front of" the engine. When they turned onto the track he "let go of the whistle cord," set the air break in emergency, and stopped the train in about 20 car lengths. The greatest difference in the narration of the accident by Ruhall and the engineer is, the latter had them walking "right along by the track" until they turned on to it, whereas Ruhall claims they walked directly toward the track and not along the side of it.

The railroad company is here insisting it was entitled on the evidence to a directed verdict. Giving to the administrator the benefit of the doubt, we pass the right of the railroad company to a peremptory, and determine the case on the whole of the evidence and instructions given the jury. Colston's administrator contends he is entitled to a reversal on the ground of improper statements of the counsel of the railroad company when making the preliminary statement of the case to the jury, the admission of incompetent evidence, and errors in the instructions given.

The preliminary statement of the counsel of the railroad company, of which complaint is made, is:

> "He argued the law of the case and applied the same to the purported facts contained in the statement and urged the jury they cannot find against the defendant."

Section 317 of the Civil Code of Practice provides, that after the jury has been selected and sworn,

> "the plaintiff must briefly state his claim and the evidence by which he expects to sustain it. * * * The defendant must then briefly state his defense and the evidence he expects to offer in support of it."

In our consideration of statements of counsel made in the exercise of the privilege afforded them by this section of the Code, we have often declared

> "no argument should be permitted in an opening statement; and, for the expedition of business, as well as to insure a fair trial to each of the litigants, the court should confine the parties to a substantial compliance with these code provisions. No state-

ment of evidence which could not possibly bear upon the issue should be permitted";

and no arguments of fact and law should be indulged in by counsel. "We do not intend to be understood as announcing that a departure from the rule, as stated in the Code, would be a reversible error. * * * The trial judges should, as far as possible, see that it is substantially complied with." A review of the objectionable statement of counsel, conceding, without deciding, it was improper, furnishes no ground for a reversal; at most, its making was a harmless error. Louisville Gas. Co. v. Kentucky Heating Co., 132 Ky. 435, 111 S. W. 374, 377.

The engineer in charge of the train, with which Colston collided, was a party defendant. He was permitted, without objections, to testify for the railroad company and himself. If his testimony be regarded as incompetent, the failure of the administrator to object to its admission in the lower court constitutes a waiver of his right to object in this court. Incompetent evidence not objected to in the circuit court may not be objected to for the first time in this court. Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502; Goldberg v. Wunderlich, 248 Ky. 798, 59 S. W. (2d) 1018; Equitable Life Assur. Soc. of U. S. v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703; Louisville & N. R. Co. v. Philpot's Adm'r, 215 Ky. 682, 286 S. W. 1078. The engineer was a competent witness for himself and the railroad company under the Acts 1932, c. 59, sec. 1, amending subsection 2 of section 606, notwithstanding his testimony concerned a transaction of himself with a decedent. The amendment authorizes one to testify concerning a transaction with a decedent "in actions for personal injury, death or damage to property by negligence or tortious acts."

The railroad company was permitted to ask if the decedent was a single man. It is argued this evidence was improperly admitted. Whether he was single or married was not pertinent to the issue. Louisville & N. R. Co. v. Smith's Adm'r, 203 Ky. 513, 263 S. W. 29, 35 A. L. R. 1238. Conceding the inadmissibility of this objectionable answer, its improper admission was harmless; in no way prejudicial to the administrator. Brown v. Weathers, 247 Ky. 306, 57 S. W. (2d) 4. It is an accepted rule that the admission of incompetent evidence

is only a reversible error where it is prejudicial or in favor of the prevailing party on a material point, not clearly established by other competent evidence. Honaker v. Crutchfield, supra; Eversole v. Chandler, 217 Ky. 148, 289 S. W. 215; Black Mt. Corp. v. Thomas, 218 Ky. 497, 291 S. W. 737; Louisville & N. R. Co. v. Johnson, 226 Ky. 322, 10 S. W. (2d) 1104; Stuyvesant Ins. Co. v. Barkett, 226 Ky. 424, 11 S. W. (2d) 87.

The instructions given to the jury were appropriate and presented the theory of both the administrator and the railroad company, which their respective evidence tended to establish. They are substantially identical with those approved by this court in Louisville & N. R. Co. v. Engleman's Adm'r, 135 Ky. 515, 122 S. W. 833, 21 Ann. Cas. 565; Simpson v. L., H. & St. L. R. Co., 207 Ky. 626, 269 S. W. 749. See Hess' Adm'r v. Louisville & N. R. Co., 249 Ky. 624, 61 S. W. (2d) 299.

Instruction No. 3 authorized a verdict for the administrator on the theory of last clear chance. It is criticised because it contains the words "if the jury believe from all the evidence" Louis Colston was in a place of peril, etc., without repeating in the instruction the words, "from all the evidence," when defining the duty of the railroad company, if those in charge of the train knew, or could have discovered, by the exercise of ordinary care, his peril in time to avoid striking him, etc. The right of the administrator to have this instruction given to the jury at all is much more doubtful and subject to debate than the language in it is to the objective stressed against it. Approving its giving, we are not impressed with the criticism urged against it.

Perceiving no error and none having been pointed out to us in the brief, the judgment is affirmed.