## Hughes et al. v. Bates' Adm'r.

May 23, 1939.

G. G. RAWLINGS for appellants.

C. B. SPICER and M. F. HALL for appellee.

Opinion of the Court by Stanley, Commissioner— Affirming.

This is an unusual automobile case. The highway between Cumberland and Harlan, at the place of accident, is on a high fill. Enoch Bates and his family lived on the south side at the foot of the embankment about 30 feet from the road. In the late afternoon of November 17, 1936, Mrs. Bates drove her cow on a path running diagonally up the fill to the road, and according to her testimony, when the cow had her forefeet on the hard surface the defendant's truck came down the road, with-

out its lights burning, at about 70 miles an hour, on its left-hand side and struck the cow. The machine carried or knocked her 53 feet down the road. On the way it struck her husband, Enoch Bates, who also was on the left shoulder of the road, and knocked him and the cow down the embankment into the yard, a distance of perhaps 40 feet from the highway. Both the man and the cow were killed instantly. Mrs. Bates stated that the road was straight and she had seen the car 200 yards away. Press Caudill testified that he and two other men were passing on muleback. They also were on the left shoulder of the road. He had seen the cow coming up the path and had ridden around her head, which was then protruding over the road. Hearing the screech of the automobile brakes and an exclamation of one of his companions, he turned his head and saw the machine had gone down over the embankment. Caudill never did see the man until he went down to the yard to his body. The other two men did not testify, it being said they were unavailable.

The driver of the truck testified that he was on the extreme right-hand side of the road with the headlights of his machine burning, traveling about 25 miles an hour and keeping a lookout. Said he: "The cow suddenly shot up a steep bank, jumped in front of the truck toward the right-hand side of the road." It was impossible for him to stop his truck. The appearance and action of the cow was so sudden that he could not think. He could not turn farther to the right without going over a 50-foot embankment. He further stated: "I jerked the car suddenly to the left to try to miss her, but the cow was so close to me I could not miss her. My truck turned over and I lost control of it and it went over the bank on the left-hand side." He never did see the man nor the woman. Other evidence shed little light on the accident.

There was a verdict for $2,150 for the death of Enoch Bates. The appeal from the judgment presents questions as to admission of evidence and the instructions.

The trial court ruled that Mrs. Bates, the widow and administratrix, could testify to the things she actually saw, and her evidence was so confined. The dual relationship of the witness brings two subsections of Section 606 of the Civil Code of Practice before us for construction or application.

Subsection 1 provides that neither a wife nor a husband shall be permitted to testify after the marriage ceases "concerning any communication between them during marriage." The term "communication" has been given a very wide meaning, but if the facts about which the spouse undertakes to testify did not come to his or her knowledge by reason of the marital relation, and may have been known and seen by any person who had opportunity to know or see them, the witness is not disqualified. Aetna Life Insurance Company v. Bethel, 140 Ky. 609, 131 S. W. 523; North River Insurance Company v. Walker, 161 Ky. 368, 170 S. W. 983. Thus in an action for the negligent death of a wife, the husband could testify as to her condition when he saw her at the hospital. Chesapeake & O. Railway Company v. Banks' Adm'r, 144 Ky. 137, 137 S. W. 1066. And the wife's evidence as to the earning capacity of her deceased husband was competent when it was not disclosed that such knowledge came to her by reason of the marriage relation. Kennedy Transfer Company v. Greenfield's Adm'x, 248 Ky. 708, 59 S. W. (2d) 978. See also Stokes v. Goodwin, 255 Ky. 258, 73 S. W. (2d) 27. The widow's evidence was properly received.

Subsection 2 of Section 606 provides, subject to the provisions of another subsection, that no person shall testify for himself concerning any transaction or act done or omitted to be done by one who is dead except for the purpose and to the extent of affecting a person who is not within certain classes, and except "in actions for personal injury, death or damage to property by negligence or tortious acts," subject to some "unless" conditions. The quotation is an exception added by Chapter 59, Acts of the 1932 General Assembly. The administratrix, by reason of being the widow of the decedent, had a personal pecuniary interest in the recovery of a judgment and testified for herself concerning acts done or omitted to be done by her late husband. Whatever disqualification there may have been to one occupying her status previous to the amendment, it was thereby removed in such a case as this, and the court properly ruled Mrs. Bates to be a competent witness to relate what she had seen of the accident. Colston's Adm'r v. C., N. O. & T. P. Railway Company, 253 Ky. 512, 69 S. W. (2d) 1072.

The suit was against W. R. Hughes, his wife, Mrs. Maude Hughes, and J. F. Duncan, as partners and own-

ers of the truck. An issue was made as to W. R. Hughes being a member of the partnership. C. G. Rawlings, attorney for Mrs. Hughes, testified that he had prepared articles of partnership when the firm was formed in May or July before the accident. The instrument had been recorded but not indexed, and neither it nor the record thereof could be found. He testified that the members of the partnership, as disclosed by the lost articles, were Mrs. Hughes, and Duncan, and that W. R. Hughes had nothing to do with it. Later in the trial the defendants placed a deputy county court clerk on the stand and produced the record of that office in which was contained articles of incorporation between Mrs. Hughes and Duncan to conduct a bakery business. It bore no date but had been acknowledged before C. G. Rawlings, as Notary Public, on February 18, 1937, and lodged for record on that day. This was three months after the accident involved in the case. The court directed the jury not to consider Mr. Rawlings' evidence "about this record," because it had been read and was the best evidence. Appellants insist that this rejection was a prejudicial error. No assertion of any kind was made at the time the court excluded Mr. Rawlings' evidence from the consideration of the jury that the instrument which the defendants themselves introduced was not the same as that about which he had testified. They never claimed there was but one such document. Since it bore no date other than the date of acknowledgment, which may have been for the purpose of having the instrument recorded, the presumption is that this was the same instrument. The defendants had the benefit of proving it, for the court did not reject the paper or exclude it from the consideration of the jury. Under the circumstances we do not regard the exclusion of the verbal testimony as prejudicial error.

The first instruction stated the duties of the driver of the truck to have been to have it under reasonable control; to operate it in a careful manner with due regard for the safety and convenience of pedestrians and other traffic; to travel upon the right side of the highway whenever possible, and unless the left side was clear of all other traffic or obstructions and presented a clear vision for a distance of at least 150 feet ahead, and not to run at a greater speed than 30 miles per hour, that it was his duty upon approaching any animal being ridden or driven to exercise every reasonable precaution to pre-

vent frightening such animal and to insure the safety of any person riding or driving the same; to keep a lookout ahead for persons, vehicles, stock and cattle upon the highway, and to exercise ordinary care to prevent injury to persons, vehicles, cattle or stock upon the highway at the time.

It is to be observed that the instruction embraced the common law duties of a driver and those created or defined by Sections 2739g-35 and 2739g-44 of the Statutes, as well as Section 2739g-86 relating to speed of trucks. The appellants submit that the first two statutes are not applicable. Section 2739g-35 provides that the operator of any vehicle shall drive upon the right hand side of the road "whenever possible, and unless the left side of such highway is clear of all other traffic or obstructions and presents a clear vision for a distance of at least one hundred and fifty feet ahead." The point is made that the evidence was that there was a clear vision for a greater distance than 150 feet and there was no other traffic or obstruction along the left side; hence, that it was not incumbent upon the truck driver to keep to the right-hand side. We think that an extreme view. The driver did testify that he had a clear vision and that there was nothing in the way, but he also said he was on the right-hand side. The plaintiff's evidence showed that it certainly was possible for him to have driven on the right-hand side of the highway, and certainly that there were obstructions on the left-hand side, viz., a cow and a man on foot, and evidence that there were also three mules carrying men over there.

The second section (2739g-44), relating to the duties of a motorist in relation to animals, has been held inapplicable where a motor bus ran into a drove of cattle, since its purpose was to prevent frightening animals. Consolidated Coach Corporation v. Sphar, 226 Ky. 30, 10 S. W. (2d) 482. Though the portion of the instruction in this case based upon this statute might have been omitted without harm, yet it could be inferred from the circumstances of the accident as related by the driver of the truck that the cow was frightened, and the plaintiff's evidence showed she was being driven on the highway, which obviously includes the unpaved as well as the paved portions. We are of opinion therefore that the instruction was not erroneous in this particular.

Some other criticism is made of the instructions and

the refusal to give others offered by the defendants. But we do not regard the contentions meritorious.

Perceiving no prejudicial error to the substantial rights of the defendants, the judgment is affirmed.